IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| HSIN CHI SU, | § | |
|     PLAINTIFF | § | |
| | § | |
| vs. | § | CASE NO. 14-2166 |
| | § | JURY |
| | § | |
| MEGA INTERNATIONAL | § | |
| COMMERCIAL BANK CO., LTD., | § | |
| IN ITS INDIVIDUAL CAPACITY | § | |
| AND ITS CAPACITY AS AGENT | § | |
| FOR VARIOUS LENDERS | § | |
| | § | |
|     DEFENDANT | § | |
| | § | |
| | § | |

**HSIN CHI SU'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Hsin Chi Su ("Mr. Su"), for his complaint alleges, upon information and belief:

**I. JURISDICTION AND VENUE**

1. Mr. Su asserts intellectual property rights with respect to the *M.V. D Whale*, the *M.V. G Whale*, the *M.V. H Whale* (the "Vessels"), regarding his patents awarded by Japan, Korea, and China (the "Alleged Su IP Claims"). Mr. Su asserted that neither the Bankruptcy Court nor any Court of the United States has jurisdiction to determine the validity or enforceability of a foreign patent. However, the Bankruptcy Court ordered the sale of the Vessels free and clear of all Alleged Su IP Claims and further ordered that "[t]o the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that: (i) Mr. Su has a valid claim against the estate in respect of the Alleged Su IP Claims, and (ii) the Debtor transferred property rights to the Buyer that did not lawfully belong to the Debtor, Mega and the Lender's monetary obligations and the Alleged Su

IP Claim may be equitably adjusted . . . and are not mooted with respect to the Estate or the Lenders by entry of this Order."[1]

2. Mr. Su acknowledges that this Court has jurisdiction to order damages Mr. Su is entitled to from the Lenders. However, if the validity and/or enforceability of Mr. Su's patents are contested by the Defendant, such issue can only be determined by the courts in the countries where those patents were issued. If this occurs, Mr. Su will ask the Court to abate this proceeding pending a ruling from the courts of Japan, Korea and China as to the validity and enforceability of the patents.

3. To the extent the Court addresses damages Mr. Su is entitled to from Defendant, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202 and 1338 and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c).

4. To the extent the Court addresses damages Mr. Su is entitled to from Defendant, then Mr. Su consents to the entry of a final judgment on all matters in this proceeding.

5. Pursuant to Fed. R Civ. P. 38, Mr. Su demands a jury trial.

## II. PARTIES

6. Plaintiff, Hsin Chi Su ("Mr. Su" or "Plaintiff"), is an individual who brings this action in his individual capacity, in his capacity as a guarantor of certain debts owed by the Defendant, in his capacity as the holder of several patents on technology included in the Vessel, and in his capacity as director of the equity holders, some of whom are also creditors of the debtors in the approximate amount of $250 million, of all of the debtors in the jointly

---

[1] *Order Approving Sale of the M.V. D Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 6, Bankruptcy Docket No. 1944; s*ee also* Bankruptcy Docket No. 1945 (collectively, the " D Sale Order"). *Order Approving Sale of the M.V. G Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 6, Bankruptcy Docket No. 1946; s*ee also* Bankruptcy Docket No. 1947 (collectively, the " G Sale Order"). *Order Approving Sale of the M.V. H Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 6, Bankruptcy Docket No. 1948; s*ee also* Bankruptcy Docket No. 1949 (collectively, the " H Sale Order"). The D Sale Order, the G Sale Order and the H Sale Order are collectively referred to as the "Sale Orders."

administered bankruptcy proceeding *In re TMT Procurement Corp., et al*. Case No. 13-33763 pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case").

7. Defendant, Mega International Commercial Bank Co., Ltd. in its individual capacity and its capacity as agent for various lenders (including Oaktree Capital which is the majority lender) ("Defendant" or "Mega Bank") is a financial institution existing under the laws of China, having a principal place of business at No. 100, Chi-lin Rd., Taipei City 10424 Taiwan with branches in New York City and Los Angeles.  On information and belief, Defendant is doing business in this district including participating in the Bankruptcy Case.  Defendant may be served at Mega International Commercial Bank Co., Ltd., Attn: Kuang-Si Shiu, President, 65 Liberty Street, New York, NY 10005.  A copy of this complaint will also be forwarded to Defendant's attorneys of record in the Bankruptcy Case – Charles S. Kelley, Mayer Brown, LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002.

### III. FACTUAL BACKGROUND

8. On or about 2007, Mr. Su applied for patents in Japan, Korea and China covering his invention related to piping structure for ships which were later granted.  The priority for the patents relate back to 2006.  Collectively, the Japanese, Korean, and Chinese Patents are referred to herein as the Asian Patents.

9. In the year 2010, TMT Co., Ltd. made a presentation to a syndicate of 26 banks located in Taiwan to finance the purchase of multiple ships, including the Vessels.  The syndicate consisted of the lenders who originally made the ship loans.  Most of the syndicate banks have sold their loans to competitors of TMT Co., Ltd.

10. The presentation included a detailed description of Mr. Su's patented design for pipelines installed inside the hull instead of on the outside. Mr. Su's Asian Patents claim the invention that is incorporated in the Vessels.

11. The lenders approved the loans and Mr. Su used separate borrowing entities for the purchase of each ship. Therefore, each entity has a separate set of loan documents. None of the loan documents contain a single word about patents, intellectual property or related licenses. As a result, the loan documents do not require and cannot be construed to require Mr. Su to convey his patent to the borrowers or enter into licenses permitting the borrowers to use his design.

12. Mr. Su caused D Whale Corporation, G Whale Corporation, and H Whale Corporation (collectively, the "Debtors") to obtain the loans from Mega Bank to purchase the Vessels.

13. On or about March 30, 2007, Mr. Su directed Hyundai Heavy Industries Co., Ltd. (the "Shipbuilder") to build the *M.V. D Whale* instructing the Shipbuilder to incorporate his patented designs related to the underdeck piping structure for an oil tanker. There was no transfer of the Asian Patents or any related intellectual property to the Shipbuilder.

14. On or about August 17, 2007, Mr. Su directed Hyundai Heavy Industries Co., Ltd. (the "Shipbuilder") to build the *M.V. G Whale* and *M.V. H Whale* instructing the Shipbuilder to incorporate his patented designs related to the under deck piping structure for an oil tanker. There was no transfer of the Asian Patents or any related intellectual property to the Shipbuilder.

15. Because Mr. Su was the owner of the Debtors, he simply decided to allow the Debtors to use his patented technology free of any royalty or license fees and free of his right to sue for patent infringement. There are no written or oral agreements to this effect. Thus, there

was nothing to disclose in the Debtors' schedules or the statements of financial affairs about intellectual property.

16. Finally, Mr. Su never decided to allow any party, other than certain of his own companies, to use the design covered by his patents.

17. On June 20, 2013, the Debtors, along with multiple related entities, initiated their Chapter 11 bankruptcy case which is jointly administered under Case No. 13-33763 in order to stop collection activities.

18. On July 9, 2014, D Whale Corporation filed its motion to approve sale of the *M.V. D Whale* "free and clear" of all interests to Mega Bank or its nominee with a credit bid of $61,250,000 submitted in the name of Pacific Orca Holdings D, LLC.[2]

19. On July 9, 2014, G Whale Corporation filed its motion to approve sale of the *M.V. G Whale* "free and clear" of all interests to Mega Bank or its nominee with a credit bid of $61,250,000 submitted in the name of Pacific Orca Holdings G, LLC.[3]

20. On July 9, 2014, H Whale Corporation filed its motion to approve sale of the *M.V. H Whale* "free and clear" of all interests to Mega Bank or its nominee with a credit bid of $62,000,000 submitted in the name of Pacific Orca Holdings H, LLC.[4]

21. On July 13, 2014, Mr. Su filed his omnibus objection to all three sales asserting, among other things, that the Bankruptcy Court lacked jurisdiction to sell the Vessels free and clear of his Asian Patents because a United States court cannot judge the validity, infringement or enforceability of a foreign patent.[5]

---

[2] *See* Bankruptcy Docket No. 1850.
[3] *See* Bankruptcy Docket No. 1851.
[4] *See* Bankruptcy Docket No. 1852.
[5] *See* Bankruptcy Docket No. 1887. *See also Brief of Hsin Chi ("Nobu") Su on Issue of Whether Vessels Can Be Sold Free and Clear of His Patent Rights*, Bankruptcy Docket No. 1794.

22. Mr. Su notified the Debtors and brokers hired to sell the Vessels of his patent claims.

23. Despite Mr. Su's objection, the Bankruptcy Court approved the sale of the Vessels free and clear of any interests, stating:

> To the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that: (i) Mr. Su has a valid claim against the estate in respect of the Alleged Su IP Claims, and (ii) the Debtor transferred property rights to the Buyer that did not lawfully belong to the Debtor, Mega and the Lender's monetary obligations and the Alleged Su IP Claim may be equitably adjusted . . . and are not mooted with respect to the Estate or the Lenders by entry of this Order.[6]

24. Based on the Bankruptcy Court's rulings, Mega Bank, its nominee, the lenders or a future buyer may operate the Vessels in China, Japan or Korea, without a license to use Mr. Su's patents, if it is determined that the Bankruptcy Court's Sale Orders extinguished Mr. Su's rights to sue Mega Bank, its nominee, the lenders or a future buyer for patent infringement.

25. Mr. Su files this proceeding to obtain a declaratory judgment that the Bankruptcy Case has no impact on *his* intellectual property rights and that Mr. Su retains the benefits of *his* patents and is not precluded from, among other things, suing future patent infringers.

26. Alternatively, if it is determined that the Bankruptcy Court disposed of Mr. Su's patent rights, then absent an ability to sue future patent infringers in China, Korea and Japan, Mr. Su is entitled to the monetary value of the loss of that right from Mega Bank and/or the lenders as the Bankruptcy Court authorized the sale of his assets to Mega Bank's nominee.

## IV. ARGUMENT

**A. Mr. Su's patent rights were not property of the estate.**

27. Mr. Su holds a property interest in patents that he owns and that were never

---

[6] Sale Orders, ¶¶6.

transferred to the Debtors.  This distinction was recognized in *In re The Clark Entertainment Group*, where the court held that intellectual property rights are separate and distinct from the material objects in which the work is embodied such that an owner has the power to convey ownership in the material object (e.g., a book) while reserving the common law copyright.[7]  Hence, the court ruled that the debtor was the proper owner of the tapes (i.e. the material object), but that the debtor could not reproduce or distribute copies of the tapes to third parties.  In the same manner here, the Debtors granted the lenders a lien on the material objects (i.e. the Vessels) but not the Asian Patents.  The lenders can sell, foreclose upon, or use in the Vessels any way they like, so long as they do not infringe on the rights owned by Mr. Su under the Asian Patents, which (unlike the Vessels) were never transferred to the Debtors or pledged as collateral to the lenders to secure Mr. Su's guarantees.

28.     Stated another way, Mr. Su's Asian patents are simply not part of the Debtors' bankruptcy estate created by 11 U.S.C. § 541, nor are the proceeds allocable to the sale of his intellectual property rights.  It has long been held that a debtor's estate succeeds to no more interest than the debtor had on the petition date and that the estate takes its interest subject to the condition under which the debtor held the interest.[8]  Hence, it is clear that the estate in this case takes the Vessels subject to Mr. Su's patent rights as they existed on the petition date.

29.     For example, in *Digeo, Inc. v. Audible, Inc.*, plaintiff Digeo, Inc. obtained rights in a patent through an assignment purchased from IPDN Corporation's bankruptcy estate.[9]  Digeo later sued Audible, Inc. for infringement of this patent.  Audible, Inc. argued its license from an inventor, previously believed to be deceased, was a complete defense to the

---

[7] *In re The Clark Entertainment Group*, 183 B.R. 73, 79 (Bankr. D.N.J. 1995)
[8] H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U. S. Code Cong. & Ad. News 5787 cited in *In re Lally*, 51 B.R. 204, 205 (N.D. Iowa 1985).  *See, e.g.* . *In re Creative Data Forms, Inc.,* 41 BR 334 (BC ED Pa. 41 BR 334,) *affd*  72 BR 619 (ED Pa (1985, ED Pa); *In re Schauer,*  62 BR 526 (BC DC Minn. 1986).
[9] *Digeo, Inc. v. Audible, Inc.*, 2006 U.S. Dist. LEXIS 62994, *2 (W.D. Wash. 2006).

infringement suit. The court found Digeo lacked sole legal title to the patent despite the bankruptcy sale of the patent because the bankruptcy court could not have sold what the debtor did not own.[10] The court further recognized that the bankruptcy sale order did not adjudicate ownership.[11] *See also In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y 2009) (abstaining from action where patent owner sued buyer of assets pursuant to § 363 for trademark infringement and recognizing that "Debtors could not have sold to [buyer] what they did not at least colorably own.").

30. Likewise, in this case, the Sale Orders did not determine ownership of the Asian Patents. Mr. Su owns the Asian Patents and retains his rights to enforce the Asian Patents by, among other things, suing infringers regardless of the Sale Orders.

**B.  Alternatively, Mr. Su is entitled to the value of the loss of his right to sue for future patent infringement.**

31. To the extent the Bankruptcy Court has extinguished Mr. Su's ability to sue future patent infringers in China, Korea and Japan with regard to the Vessels, Mr. Su is entitled to the monetary value of that right from Mega Bank and/or the lenders. Courts have held that the principal value of a patent is its statutory right to exclude others from a specific market.[12]

## V. SUIT FOR DECLARATORY JUDGMENT

32. Plaintiff repeats and realleges each of allegations set forth in paragraphs 1 – 31 as if set forth herein.

33. Plaintiff seeks entry of a declaratory judgment that the Bankruptcy Case has no effect as to his patent rights and specifically that Mr. Su may protect his patent rights as allowed by law by, among other things, suing future patent infringers.

---

[10] *Id.* at *13-14.
[11] *Id.* at *14.
[12] *Polymer Techs. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996) (assessing whether preliminary injunction was warranted).

34. Alternatively, Plaintiff seeks entry of a judgment finding that Plaintiff is entitled to the monetary value of the loss of his intellectual property rights as defined above in the amount of no less than $100 million, plus interest at a rate of 8.25%.

35. Plaintiff seeks reasonable attorney fees, expenses and costs for bringing this action as allowed by law including 35 U.S.C. § 285.

## PRAYER

WHEREFORE, Plaintiff, prays for relief against Defendant as follows:

1. Declaring that the Bankruptcy Case has no effect as to his patent rights and specifically that Mr. Su may protect his patent rights as allowed by law by, among other things, suing future patent infringers;

2. Alternatively, declaring Plaintiff is immediately entitled to the monetary value of the loss of his right to sue in the amount of no less than $100 million, plus interest at a rate of 8.25%;

3. Award of reasonable attorneys' fees, expenses and costs;

4. Such other relief that the Court deems just and equitable.

Respectfully Submitted,

By: */s/ Edward L. Rothberg*
    EDWARD L. ROTHBERG
    State Bar No. 17313990
    5847 San Felipe, Suite 2200
    Houston, Texas 77057
    Telephone: (713) 977-8686
    Facsimile: (713) 735-4135

OF COUNSEL:

Hoover Slovacek LLP
MELISSA A. HASELDEN
State Bar No. 00794778
DEIRDRE CAREY BROWN
State Bar No. 24049116
TX Federal ID: 570838
T. JOSH JUDD
State Bar No. 24036866
ANNIE E. CATMULL
State Bar No. 00794932
MAZELLE S. KRASOFF
State Bar No. 24078802
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile: 713.977.5395