IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| HSIN CHI SU, | § | |
|     PLAINTIFF | § | |
| | § | |
| vs. | § | CASE NO. 14-2166 |
| | § | JURY |
| | § | |
| MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD., IN ITS INDIVIDUAL CAPACITY AND ITS CAPACITY AS AGENT FOR VARIOUS LENDERS, CHINATRUST COMMERCIAL BANK CO., LTD., S.C. LOWY PRIMARY INVESTMENTS, LTD., J.P. MORGAN CHASE BANK, N.A., OCM FORMOSA STRAIT HOLDINGS, LTD., FORE MULTI STRATEGY MASTER FUND, LTD., MACQUARIE BANK LIMITED, FIRST COMMERCIAL BANK, OAKTREE CAPITAL MANAGEMENT L.P., WILMINGTON TRUST, NATIONAL ASSOCIATION, D WHALE CORPORATION, G WHALE CORPORATION, H WHALE CORPORATION, AND PARTICIPATING LENDERS JOHN DOE(S) | § | |
|     DEFENDANTS | § | |
| | § | |
| | § | |

**FIRST AMENDED COMPLAINT**

Plaintiff, Hsin Chi Su ("Mr. Su"), respectfully would show:

**JURISDICTION AND VENUE**

1. The countries of Japan, Korea, and China awarded Mr. Su patents on certain technology used by the *M.V. D Whale*, the *M.V. G Whale*, the *M.V. H Whale* (the "Vessels"). In

2013, the separate companies that owned the Vessels filed voluntary petitions for chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas. No Court of the United States has jurisdiction to determine the validity or enforceability of a foreign patent. However, the Bankruptcy Court ordered the sale of the Vessels free and clear of all Mr. Su's patent rights. [1]

2. The Bankruptcy Court further ordered that:

To the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that (i) Mr. Su has a valid claim against the Estate in respect of the Alleged Su Claims, and (ii) the Debtor transferred property rights to the buyer that did not lawfully belong to the Debtor, [lender Defendants'] monetary obligations and Alleged Su Claims may be equitably adjusted if, an action, proceeding or contested matter is commenced by Mr. Su on or before August 15, 2014. For the avoidance of doubt, the automatic stay is hereby lifted to permit filing of such actions in this Court or in the United States District Court. Mr. Su may allege in such a proceeding that this Court or the United States District Court should defer to a foreign court for the determination of Mr. Su's rights. Should this Court, or the United States District Court so defer, then this Court or the United States District Court may order that (i) the determination of the foreign court will be final and binding; (ii) the determination of the foreign court will be received and applied in accordance with applicable law; or (iii) other relief be granted with respect to the recognition (or lack thereof) of the foreign proceeding. The commencement and prosecution of any such actions, proceedings, or contested matters by Mr. Su are not mooted with respect to the Estate or the Secured Lender or Lenders by entry of this Order. [2]

3. The U.S. District Court for the Southern District of Texas has jurisdiction to order damages Mr. Su is entitled to from the Defendants. However, if the validity and/or

---

[1] The Bankruptcy Court *sua sponte* entered a subsequent modifying order that, among other things, clarified that "[f]or the avoidance of doubt, [it did] not authorize any person, purchaser, successor or assign to incorporate or utilize any patented technology ***in any other vessel or thing***." *Supplemental Omnibus Order Clarifying Sale Order for the M.V. A Whale, M.V. B Whale, M.V. D Whale, M.V. G Whale and M.V. H Whale* (Docket No. 2041) (emphasis added).

[2] *Supplemental Omnibus Order Clarifying Sale Order for the M.V. A Whale, M.V. B Whale, M.V. D Whale, M.V., G Whale and M.V. H Whale* (Docket No. 2041), which order supplements and modifies the (i) *Order Approving Sale of the M.V. D Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 6, Bankruptcy Docket No. 1944; s*ee also* Bankruptcy Docket No. 1945 (collectively, the " D Sale Order");(ii) *Order Approving Sale of the M.V. G Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 6, Bankruptcy Docket No. 1946; s*ee also* Bankruptcy Docket No. 1947 (collectively, the " G Sale Order"), and (iii) *Order Approving Sale of the M.V. H Whale Free and Clear of Claims and Interests Pursuant to 11 U.S.C. 363*, ¶ 6, Bankruptcy Docket No. 1948; s*ee also* Bankruptcy Docket No. 1949 (collectively, the " H Sale Order"). The orders are collectively referred to as the "Sale Orders."

enforceability of Mr. Su's patents are contested by any of the Defendants, then such issue can be determined only by the courts in the countries where those patents were issued. If this occurs, Mr. Su will ask the Court to abate this proceeding pending a ruling from the courts of Japan, Korea and China as to the validity and enforceability of the patents.

4. To the extent the Court addresses damages Mr. Su is entitled to from Defendants, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201, 2202 and 1338 and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c).

5. To the extent the Court addresses damages Mr. Su is entitled to from Defendants, then Mr. Su consents to the entry of a final judgment on all matters in this proceeding.

6. Pursuant to Fed. R Civ. P. 38, Mr. Su demands a jury trial.

## PARTIES

7. Plaintiff, Hsin Chi Su ("Mr. Su" or "Plaintiff"), is an individual who brings this action (i) in his individual capacity, (ii) in his capacity as a guarantor of certain debts owed to Defendant Mega Bank, (iii) in his capacity as the holder of several patents on technology included in the Vessels, and (iv) in his capacity as director of the equity holders of the Defendant Debtors some of whom are owed an approximate aggregate of $250 million by the Defendant Debtors (and other debtors who are not parties to this lawsuit) whose bankruptcies are jointly administered under Case No. 13-33763 , styled *In re TMT Procurement Corp., et al*., pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case").

8. Defendant, Mega International Commercial Bank Co., Ltd. in its individual capacity and its capacity as agent for various lenders (including Oaktree Capital which is the majority lender) is a financial institution existing under the laws of China, having a principal

place of business at No. 100, Chi-lin Rd., Taipei City 10424 Taiwan with branches in New York City and Los Angeles.  On information and belief, Defendant is doing business in this district including participating in the Bankruptcy Case.  Defendant may be served at Mega International Commercial Bank Co., Ltd., Attn: Kuang-Si Shiu, President, 65 Liberty Street, New York, NY 10005.  A copy of this complaint will also be forwarded to Defendant's attorneys of record in the Bankruptcy Case – Charles S. Kelley, Mayer Brown, LLP, 700 Louisiana Street, Suite 3400, Houston, Texas 77002.

9. Defendant, Chinatrust Commercial Bank Co., Ltd., will be served care of their registered agent or pursuant to other applicable law.

10. Defendant, SC Lowy Primary Investments, Ltd., is believed to be doing business in this district including participating in the Bankruptcy Case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case –Charles S. Kelley, Mayer Brown LLP, 700 Louisiana St., Suite 3400, Houston, Texas 77002.

11. Defendant, JPMorgan Chase Bank, N.A., can be served with process by serving its registered agent at C.T. Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

12. Defendant, OCM Formosa Strait Holdings, Ltd., is believed to be doing business in this district as well as participating in the bankruptcy case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case – Andrew Ehrlich, Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019-6064.

13. Defendant, Fore Multi Strategy Master Fund, Ltd., will be served care of their registered agent or pursuant to other applicable law.

14. Defendant, Macquarie Bank Limited, is believed to be doing business in this district including participating in the Bankruptcy Case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case –Carey Schreiber, Winston Strawn LLP, 200 Park Ave., New York, NY 10166.

15. Defendant, First Commercial Bank, is believed to be doing business in this district including participating in the Bankruptcy Case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case – Eli Omar Columbus, Winstead PC, 500 Winstead Building, 2728 N. Harwood Street, Dallas, Texas 75201.

16. Defendant, Oaktree Capital Management L.P. is believed to be doing business in this district including participating in the Bankruptcy Case. A copy of this complaint will be served on Defendant's attorneys of record in the Bankruptcy Case – Andrew Ehrlich, Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, NY 10019-6064.

17. Defendant, Wilmington Trust, National Association can be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

18. Defendant, D Whale Corporation is an entity organized under the laws of Liberia. Defendant can be served through its attorneys of record William A. Wood and Jason Cohen, Bracewell & Giuliani LLP, 711 Louisiana St., Suite 2300, Houston, Texas 77002.

19. Defendant, G Whale Corporation is an entity organized under the laws of Liberia. Defendant can be served through its attorneys of record William A. Wood and Jason Cohen, Bracewell & Giuliani LLP, 711 Louisiana St., Suite 2300, Houston, Texas 77002.

20. Defendant, H Whale Corporation is an entity organized under the laws of Liberia.

Defendant can be served through its attorneys of record William A. Wood and Jason Cohen, Bracewell & Giuliani LLP, 711 Louisiana St., Suite 2300, Houston, Texas 77002.

21. Defendants Participating Lenders John Doe(s) is/are the lender(s) who participated in the D Whale, G Whale and H Whale loans but whose ident(ies) is/are unknown to Plaintiff.

## FACTUAL BACKGROUND

22. On or about 2006 and 2007, Mr. Su applied for patents in Japan, Korea and China covering his invention related to piping structure for ships.

23. Japan, Korea, and China granted the patents to Mr. Su. Collectively, the Japanese, Korean, and Chinese Patents are referred to herein as the "Asian Patents".

24. The priority for the Asian Patents relate back to at least 2006.

25. Mr. Su was a principal and person in control of TMT Co., Ltd.

26. In the year 2010, TMT Co., Ltd. made a presentation to a syndicate of 26 lenders located in Taiwan to finance the purchase of multiple ships, including the Vessels.

27. The syndicate consisted of the lenders who made or participated in the original ship loans to D Whale Corporation, G Whale Corporation, and H Whale Corporation.

28. Most of the syndicate banks have sold their loans to competitors of TMT Co., Ltd. and of its related entities.

29. The 2010 presentation to the lender syndicate included a detailed description of Mr. Su's patented design for pipelines installed inside a vessel's hull instead of on the outside, i.e., the design that is covered by Mr. Su's Asian Patents.

30. The lenders approved the loans and Mr. Su caused separate entities to borrow for the purchase of each ship.

31. Therefore, each entity has a separate set of loan documents.

32. Mr. Su caused D Whale Corporation, G Whale Corporation, and H Whale Corporation (collectively, the "Debtor Defendants") to obtain the loans from Mega Bank to purchase the Vessels.

33. None of the loan documents contain a single word about patents, intellectual property or related licenses.

34. The loan documents do not require and cannot be construed to require Mr. Su to convey any patent to the borrowers (or to anyone else) or to enter into licenses permitting the borrowers (or anyone else) to use his designs that are protected by the Asian Patents.

35. The loan documents and related borrowing transactions did not exhaust any of the Asian Patents.

36. On or about March 30, 2007, Mr. Su directed Hyundai Heavy Industries Co., Ltd. (the "Shipbuilder") to build the *M.V. D Whale* instructing the Shipbuilder to incorporate his designs related to the underdeck piping structure for an oil tanker, designs protected by the Asian Patents.

37. Mr. Su did not transfer to the Shipbuilder (or to anyone else) the Asian Patents, a right or license therefor, covenant not to sue for patent infringement or any related intellectual property or contract right.

38. The Shipbuilder's incorporation of the patented designs did not exhaust, or cause the exhaustion of, any of the Asian Patents.

39. On or about August 17, 2007, Mr. Su directed Hyundai Heavy Industries Co., Ltd. (the "Shipbuilder") to build the *M.V. G Whale* and *M.V. H Whale* instructing the Shipbuilder to incorporate his designs related to the under deck piping structure for an oil tanker, designs

protected by the Asian Patents.

40. There was no transfer to the Shipbuilder (or to anyone else) of the Asian Patents, any license therefor, or any related intellectual property.

41. The Shipbuilder's incorporation of the patented designs did not exhaust, or cause the exhaustion of, any of the Asian Patents.

42. As the owner of the Defendant Debtors, Mr. Su simply allowed the Defendant Debtors to use his design and technology protected by the Asian Patents free of any royalty or license fees. Accordingly, Mr. Su declined to sue for patent infringement. There were no written or oral agreements as to the arrangement.

43. Mr. Su never decided to allow any party, other than certain of his own companies, such as the Debtor Defendants, to use the design covered by the Asian Patents.

44. On June 20, 2013, the Debtor Defendants, along with multiple related entities, initiated their respective Chapter 11 bankruptcy cases, which cases are jointly administered under Case No. 13-33763. The bankruptcy cases were filed in order to stop collection activities.

45. On June 20, 2013, the Asian Patents were in full force and effect.

46. Since their approval in 2006 and 2007, the Asian Patents have remained in full force and effect, without interruption, through the present.

47. On July 9, 2014, D Whale Corporation filed in the Bankruptcy Court its motion to approve the sale of the *M.V. D Whale* "free and clear" of all interests to Mega Bank or its nominee with a credit bid of $61,250,000 submitted in the name of Pacific Orca Holdings D, LLC.[3]

48. On July 9, 2014, G Whale Corporation filed in the Bankruptcy Court its motion to approve the sale of the *M.V. G Whale* "free and clear" of all interests to Mega Bank or its

---

[3] *See* Bankruptcy Docket No. 1850.

nominee with a credit bid of $61,250,000 submitted in the name of Pacific Orca Holdings G, LLC.[4]

49. On July 9, 2014, H Whale Corporation filed in the Bankruptcy Court its motion to approve the sale of the *M.V. H Whale* "free and clear" of all interests to Mega Bank or its nominee with a credit bid of $62,000,000 submitted in the name of Pacific Orca Holdings H, LLC.[5]

50. On July 13, 2014, Mr. Su filed his omnibus objection to all three sales asserting, among other things, that the Bankruptcy Court lacked jurisdiction to sell the Vessels free and clear of his Asian Patents, and related intellectual property rights, because a Court of the United States cannot judge the validity, infringement or enforceability of a foreign patent.[6]

51. Mr. Su notified the Defendants, and the brokers hired to sell the Vessels, of his rights and claims under the Asian Patents.

52. Despite Mr. Su's objections, the Bankruptcy Court approved the sale of the Vessels over the objections of Mr. Su. However, the sale order provides:

> To the extent that this Court or the United States District Court for the Southern District of Texas (the "District Court") shall determine that (i) Mr. Su has a valid claim against the Estate in respect of the Alleged Su Claims, and (ii) the Debtor transferred property rights to the buyer that did not lawfully belong to the Debtor, [lender Defendants'] monetary obligations and Alleged Su Claims may be equitably adjusted if, an action, proceeding or contested matter is commenced by Mr. Su on or before August 15, 2014. For the avoidance of doubt, the automatic stay is hereby lifted to permit filing of such actions in this Court or in the United States District Court. Mr. Su may allege in such a proceeding that this Court or the United States District Court should defer to a foreign court for the determination of Mr. Su's rights. Should this Court, or the United States District Court so defer, then this Court or the United States District Court may order that (i) the determination of the foreign court will be final and binding; (ii) the determination of the foreign court will be received and applied in accordance with

---

[4] *See* Bankruptcy Docket No. 1851.
[5] *See* Bankruptcy Docket No. 1852.
[6] *See* Bankruptcy Docket No. 1887. *See also Brief of Hsin Chi ("Nobu") Su on Issue of Whether Vessels Can Be Sold Free and Clear of His Patent Rights*, Bankruptcy Docket No. 1794.

applicable law; or (iii) other relief be granted with respect to the recognition (or lack thereof) of the foreign proceeding. The commencement and prosecution of any such actions, proceedings, or contested matters by Mr. Su are not mooted with respect to the Estate or the Secured Lender or Lenders by entry of this Order.[7]

53. Under the Bankruptcy Court's rulings approving the sales of the Vessels, each approved buyer may operate its respective purchased Vessel in China, Japan or Korea, without first obtaining permission and license from Mr. Su to use the technology and design protected by the Asian Patents.

54. Mr. Su, therefore, timely appealed the sale orders and those appeals remain pending.

55. When the Bankruptcy Court approved the sales of the Vessels, each approved buyer was on notice of Mr. Su's rights under the Asian Patents.

56. Mr. Su files this proceeding to obtain a declaratory judgment that the Bankruptcy Case has no impact on *his* intellectual property rights, including under the Asian Patents, and that Mr. Su retains the benefits of *his* patents, including the Asian Patents, and is not precluded from, among other things, suing future patent infringers.[8]

57. Additionally, to the extent that the Bankruptcy Court's sale orders disposed of, transferred, or diminished in any manner, Mr. Su's intellectual property rights, including under the Asian Patents, then Mr. Su is entitled to:

> a. an award equal to the monetary value of the loss of such rights, including, without limitation, the "equitabl[e] adjust[ment]" contemplated in the Bankruptcy Court's sale orders; and
>
> b. The actual sale proceeds allocable to Mr. Su's intellectual property rights

---

[7] *See* footnote 2 herein.
[8] This request for relief is sought subject to the results of Mr. Su's pending appeal of the sales orders.

**ARGUMENT**

**Mr. Su's patent rights were not property of the estate.**

58.     Mr. Su holds a property interest in patents, including the Asian Patents that he owns in his individual capacity and that were never transferred to the Debtor Defendants. Mr. Su's patent rights are separate and distinct from the Vessels. This distinction was recognized in *In re The Clark Entertainment Group*, where the court held that intellectual property rights are separate and distinct from the material objects in which the work is embodied such that an owner has the power to convey ownership in the material object (e.g., a book) while reserving the common law copyright.[9] Hence, the *Clark Entertainment* court ruled that the debtor was the proper owner of the tapes (i.e. the material object), but that the debtor could not reproduce or distribute copies of the tapes to third parties. In the same manner here, the Debtor Defendants granted the lenders a lien on the material objects (i.e. the Vessels) but not upon Asian Patents or upon any ability to use technology or design protected by the Asian Patents. The lenders can sell, foreclose upon, or use in the Vessels any way they like, so long as they do not infringe on the rights owned by Mr. Su under the Asian Patents, which (unlike the Vessels) were never transferred to the Debtors or pledged as collateral to the lenders to secure Mr. Su's guarantees.

59.     Stated another way, Mr. Su's Asian Patents, including rights to use the designs and technology protected by the Asian Patents, are not and were never part of the debtors' bankruptcy estates created by 11 U.S.C. § 541. Likewise, the sale proceeds allocable to his intellectual property rights are not property of the debtors' bankruptcy estates. It has long been held that a debtor's estate succeeds to no more interest than the debtor had on the petition date and that the estate takes its interest subject to the condition under which the debtor held the

---

[9]     *In re The Clark Entertainment Group*, 183 B.R. 73, 79 (Bankr. D.N.J. 1995)

interest.[10]  Hence, the estates in the bankruptcy cases that give rise to this lawsuit took the Vessels subject to Mr. Su's patent rights as they existed on the dates that the bankruptcy cases were filed.

60.  For example, in *Digeo, Inc. v. Audible, Inc.*, plaintiff Digeo, Inc. obtained rights in a patent through an assignment purchased from IPDN Corporation's bankruptcy estate.[11]  Digeo later sued Audible, Inc. for infringement of this patent.  Audible, Inc. argued its license from an inventor, previously believed to be deceased, was a complete defense to the infringement suit.  The court found Digeo lacked sole legal title to the patent despite the bankruptcy sale of the patent because the bankruptcy court could not have sold what the debtor did not own.[12]  The court further recognized that the bankruptcy sale order did not adjudicate ownership.[13] *See also In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 642 (Bankr. S.D.N.Y 2009) (abstaining from action where patent owner sued buyer of assets pursuant to § 363 for trademark infringement and recognizing that "Debtors could not have sold to [buyer] what they did not at least colorably own.").

61.  Likewise, the Bankruptcy Court's sale orders could not have determined ownership of the Asian Patents or rights to use design and technology protected by the Asian Patents.  Mr. Su owns the Asian Patents and retains his rights to enforce the Asian Patents by, among other things, suing infringers regardless of the sale orders.

**SUIT FOR DECLARATORY JUDGMENT**

62.  Plaintiff repeats and re-alleges each of allegations set forth in paragraphs 1 – 61 as

---

[10]  H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U. S. Code Cong. & Ad. News 5787 cited in *In re Lally*, 51 B.R. 204, 205 (N.D. Iowa 1985).  *See, e.g.* . *In re Creative Data Forms, Inc.,* 41 BR 334 (BC ED Pa. 41 BR 334,) *affd*  72 BR 619 (ED Pa (1985, ED Pa); *In re Schauer*,  62 BR 526 (BC DC Minn. 1986).
[11]  *Digeo, Inc. v. Audible, Inc.*, 2006 U.S. Dist. LEXIS 62994, *2 (W.D. Wash. 2006).
[12]  *Id*. at *13-14.
[13]  *Id*. at *14.

if set forth herein.

63. Plaintiff seeks entry of a declaratory judgment that the Bankruptcy Case has no effect as to his patent rights and specifically that Mr. Su may protect his patent rights as allowed by law by, among other things, suing future patent infringers.

64. Plaintiff seeks entry of a declaratory judgment that he has a valid claim against each bankruptcy estate of each Defendant Debtor.

65. Plaintiff seeks entry of a declaratory judgment that each such valid claim is entitled to administrative claim status under 11 U.S.C. §503 in the amount of the value of the loss of his intellectual property rights.

66. Plaintiff seeks entry of a declaratory judgment that Defendant Debtors transferred property rights to a buyer that did not lawfully belong to Defendant Debtors.

67. Plaintiff seeks entry of a declaratory judgment that his alleged personal liability to lender Defendants shall be equitably adjusted downward, reduced, and offset in any amount equal to the value of his lost intellectual property rights plus interest, attorney fees, and costs.

68. To the extent the Bankruptcy Court sale orders disposed of, transferred, or diminished in any manner the patent or intellectual property rights of Plaintiff, Plaintiff seeks entry of a judgment:

    a. Equal to the monetary value of the loss of his intellectual property rights as defined above in the amount of no less than $100 million, plus interest at a rate of 8.25%.; and

    b. Awarding Plaintiff the sale proceeds allocable to Plaintiff's intellectual property rights.

69. Plaintiff seeks reasonable attorney fees, expenses and costs for bringing this

action as allowed by law including 35 U.S.C. § 285.

## EQUITABLE ADJUSTMENT

70. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 – 69 as if set forth herein.

71. Plaintiff is entitled to an equitable adjustment of his guaranty liability, if any, to the Defendant lenders in an amount that is the greater of (i) the monetary value of the loss of his intellectual property rights, or (ii) the sale proceeds allocable to Plaintiff's intellectual property rights.

## UNJUST ENRICHMENT

72. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 – 71 as if set forth herein.

73. At the time of the sales of the Vessels, the Defendants were on notice of Plaintiff's intellectual property rights, including the Asian Patents, and Plaintiff's objections to the sales of the Vessels.

74. The Defendant lenders accepted the sale proceeds.

75. Defendant Debtors accepted the sale proceeds and/or the corresponding reduction of indebtedness from the Defendant lenders' receipt of the sale proceeds.

76. The Defendants had notice that Plaintiff expected compensation for any loss of his intellectual property rights that resulted from the sale of the Vessels.

77. Defendants were unjustly enriched by the sale of the Vessels.

78. To the extent that Bankruptcy Court sale orders disposed of, transferred, or diminished in any manner the patent or intellectual property rights of Plaintiff, Plaintiff seeks entry of a judgment:

a. Awarding Plaintiff damages equal to the monetary value of the loss of his intellectual property rights as defined above in the amount of no less than $100 million, plus interest at a rate of 8.25%.; and

b. Awarding Plaintiff the sale proceeds allocable to Plaintiff's intellectual property rights.

## MONEY HAD AND RECEIVED

79. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 – 78 as if set forth herein.

80. At the time of the sales of the Vessels, the Defendants were on notice of Plaintiff's intellectual property rights, including the Asian Patents, and Plaintiff's objections to the sales of the Vessels.

81. The Defendant lenders accepted the sale proceeds.

82. Defendant Debtors accepted the sale proceeds and/or the corresponding reduction of indebtedness from the Defendant lenders' receipt of the sale proceeds.

83. Defendants had no interest in Plaintiff's intellectual property rights, including the Asian Patents.

84. Defendants had no right to sell or participate in the sale of Plaintiff's intellectual property rights, including the Asian Patents.

85. The Defendants had notice that Plaintiff expected compensation for any loss to his intellectual property rights that resulted from the sale of the Vessels.

86. In equity and good conscience Defendants hold sale proceeds, or reduction of indebtedness from sale proceeds, that belong to Plaintiff.

87. To the extent that the Bankruptcy Court sale orders disposed of, transferred, or diminished in any manner the intellectual property or patent rights of Plaintiff, Plaintiff seeks entry of a judgment:

   a. Equal to the monetary value of the loss of his intellectual property rights as defined above in the amount of no less than $100 million, plus pre-judgment interest at a rate of 8.25%;

   b. Awarding Plaintiff the sale proceeds allocable to Plaintiff's intellectual property rights, including pre- and post-judgment interest;

   c. Awarding exemplary damages; and

   d. Awarding costs.

## INDIRECT INFRINGEMENT

88. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 – 87 as if set forth herein.

89. Through the overt acts described herein, including orchestration, filing, prosecution, and support, of the Defendant Debtors' motions filed in the Bankruptcy Court for approval of the sale of the Vessels—over the objections of Mr. Su based on his rights under the Asian Patents-- the Defendants actively solicited, encouraged, and assisted the buyers in their purchasing the Vessels free and clear of Mr. Su's rights under the Asian Patents.

90. To the extent that the buyers of the Vessels take actions that infringe upon the Asian Patents, Plaintiff seeks entry of a judgment against Defendants:

   a. Awarding Plaintiff damages equal to the actual damages suffered by Plaintiff as a result of such infringement plus pre-judgment interest;

   b. Awarding exemplary damages; and

    c.    Awarding attorney fees and costs.

## PRAYER

WHEREFORE, Plaintiff, prays for relief against Defendants as follows:

a. Declaring that the Bankruptcy Case has no effect as to Mr. Su's patent rights and specifically that Mr. Su may protect his patent rights as allowed by law by, and among other things, suing future patent infringers;

b. Declaring that Mr. Su has a valid claim against each bankruptcy estate each of Defendant Debtor;

c. Declaring that such valid claim is entitled to an administrative claim status in the amount of the value of the loss of Mr. Su's intellectual property rights pursuant to 11 U.S.C. § 503;

d. Declaring that Defendant Debtors transferred property rights to a buyer that did not lawfully belong to Defendant Debtors;

e. Declaring that Mr. Su's alleged personal liability to Defendant lenders shall be equitably adjusted downward, reduced, and offset in an amount equal to the value of Mr. Su's lost intellectual property rights;

f. Declaring Mr. Su is entitled to the monetary value of the loss of his intellectual property rights in the amount of no less than $100 million, plus interest at a rate of 8.25% and awarding damages to Plaintiff in such an amount;

g. Awarding Mr. Su the sale proceeds allocable to his intellectual property rights, including pre-judgment interest;

h. Declaring Mr. Su is entitled to an equitable adjustment of his guaranty liability, if any, to the Defendant lenders in an amount that is greater of (i) the monetary value of

the loss of his intellectual property rights, or (ii) the sale proceeds allocable to Mr. Su's intellectual property;

i.  Awarding exemplary damages;

j.  Awarding Mr. Su's reasonable attorneys' fees, expenses, and costs; and

k.  Such other relief that the Court deems just and equitable.

Respectfully submitted,

By: */s/ Annie E. Catmull*
ANNIE E. CATMULL
State Bar No. 00794932
Tx Fed ID: 19615
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: (713) 977-8686
Facsimile: (713) 735-4135

OF COUNSEL:

Hoover Slovacek LLP
EDWARD L. ROTHBERG
State Bar No. 17313990
DEIRDRE CAREY BROWN
State Bar No. 24049116
TX Federal ID: 570838
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile:  713.977.5395