IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HSIN CHI SU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 14 Civ. 2166 |
| | § | |
| MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD, in its individual capacity and its capacity as agent for various lenders, CHINATRUST COMMERCIAL BANK CO., LTD., S.C. LOWY PRIMARY INVESTMENTS, LTD., J.P. MORGAN CHASE BANK, N.A., OCM FORMOSA STRAIT HOLDINGS, LTD., FORE MULTI STRATEGY MASTER FUND, LTD., MACQUARIE BANK LIMITED, FIRST COMMERCIAL BANK, OAKTREE CAPITAL MANAGEMENT L.P., WILMINGTON TRUST, NATIONAL ASSOCIATION, D WHALE CORPORATION, G WHALE CORPORATION, H WHALE CORPORATION, AND PARTICIPATING LENDERS JOHN DOE(S) | § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

**WILMINGTON TRUST, NATIONAL ASSOCIATION'S**
<u>**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**</u>

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ..........................................................3

    I.      The Parties ........................................................................................................3

    II.     The Facility Agreements and Guarantees.........................................................4

    III.    The Principal Debtors' Defaults Under the Facility Agreements.....................6

    IV.    The Entry of Payment Orders on the Guarantees in Taiwan ............................7

    V.     Enforcement Proceedings in Taiwan Pursuant to the Payment Orders ............8

    VI.    The Principal Debtors' Commencement of Bankruptcy Proceedings..............9

    VII.   Amounts Due Under the Facility Agreements and Guarantees........................9

    VIII.  Demand for Payment on Mr. Su ......................................................................11

    IX.    Mr. Su's Failure to Pay....................................................................................11

LEGAL STANDARD ...............................................................................................................12

ARGUMENT.............................................................................................................................12

    I.      Wilmington Trust Is Entitled to Summary Judgment on Its Counterclaims ....12

CONCLUSION..........................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Celotex Corp.* v. *Catrett*,
 477 U.S. 317 (1986)................................................................................................12

*Medlock* v. *Ace Cash Exp., Inc.*,
 589 F. App'x 707 (5th Cir. 2014).............................................................................12

*WestRM-West Risk Mkts.* v. *Lumbermens Mut. Cas. Co.*,
 314 F. Supp. 2d 229 (S.D.N.Y. 2004) .....................................................................13

**FEDERAL RULES**

Fed. R. Civ. P. 56(a) ..............................................................................................1, 12

Defendant and Counterclaim-Plaintiff Wilmington Trust, National Association, in its capacity as successor agent and successor security trustee for the lenders under each of the syndicated loans on the *M.V. D Whale*, *M.V. G Whale* and *M.V. H Whale* (in such capacities, "Wilmington Trust" or the "Agent"),[1] through its undersigned counsel, Mayer Brown LLP, hereby moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on its counterclaims against Plaintiff and Counterclaim-Defendant Hsin Chi Su.

## PRELIMINARY STATEMENT

This is an action to enforce three guarantee agreements against Hsin Chi Su ("Nobu Su" or "Mr. Su"). In return for securing hundreds of millions of dollars in loans from various syndicated loan groups, Mr. Su promised to personally repay these monies if his companies (now debtors in possession in jointly administered bankruptcy cases pending before the Hon. Marvin Isgur) could not. In short, he guaranteed to the banks that he would personally repay loans on which the obligors defaulted. Although not required, the Agent first looked to certain collateral—the various vessels—to secure repayment for the banks before turning to the guarantees. Those vessels have been sold and the indebtedness reduced by that portion of the purchase price payable or creditable against the debt, but there remains several million dollars under each loan that is due and owing. Despite notice and demand, Mr. Su has failed make any payment to the Agent to whom he made those promises and guarantees of the amounts owing to the lenders. As a result, Wilmington Trust, in its capacity as Agent for those lenders in each of the loan facilities, is entitled to summary judgment on the guarantee claims. Mr. Su guaranteed

---

[1] The defined term "Agent" shall refer to Wilmington Trust or its predecessors-in-interest, Mega Bank, CTBC, and First Bank (each as defined herein), as appropriate.

loans on which the obligors defaulted, and the lenders to whom he made those guarantees are entitled to summary judgment.

As this Court is aware, Mr. Su formerly controlled TMT Procurement Corporation and its affiliated debtors in bankruptcy (collectively, "TMT"). Three of those affiliates relevant here were special purpose entities ("SPEs") formed for the purpose of owning sophisticated oceangoing cargo vessels, known as "Whales," each roughly the size of a very large crude carrier or VLCC. Each of the three SPEs was loaned approximately $90 million dollars (US$) by a syndicated group of foreign lending institutions to be used for the construction and purchase of a particular Whale vessel, in this case the *M.V. D Whale*, *M.V. G Whale* and the *M.V. H Whale*. To that end, each SPE entered into a separate facility agreement with the lenders for the Whale vessel it purchased. The lenders, however, wanted to ensure that they would be repaid in full if these SPE borrowers defaulted on their obligations under the facility agreements. Accordingly, Mr. Su memorialized his promises to repay the lenders and he signed separate guarantees with the Agent. In the guarantees, Mr. Su—in his personal capacity—irrevocably and unconditionally agreed to repay the Agent, for the benefit of the lenders, any and all amounts outstanding under the facility agreements if the SPE-borrowers defaulted.

Wilmington Trust, as Agent for the lenders on the D, G, and H Whale Vessels, seeks to enforce Mr. Su's obligations and to collect any and all amounts outstanding under the facility agreements. There is no genuine dispute as to a material question of fact. It is undisputed that Mr. Su entered into the guarantees, the borrowers defaulted, the lenders were not made whole, and Mr. Su is liable for the difference after

reducing the indebtedness due to the vessel sales. Under these undisputed facts, and applicable law, Wilmington Trust is entitled to summary judgment in its favor.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

The facts set forth here, which are not subject to reasonable dispute, are based on the accompanying affidavit of Joshua G. James, dated April 20, 2015 ("James Aff."); the declaration of Charles S. Kelley, dated April 20, 2015 ("Kelley Decl."); and the declaration of James C. C. Huang, dated April 17, 2015 ("Huang Decl."); and their associated documents, all of which are filed simultaneously herewith.

**I.      The Parties**

1. Mr. Su "is a natural person and is a Taiwanese citizen." (Answer to Pl.'s Compl. & Countercls. of Def. Wilmington Trust ("Wilmington Trust's Countercls.") ¶ 3; admitted in Mr. Su's Answer & Affirmative Defenses to Wilmington Trust's Countercls. ("Mr. Su's Answer") ¶ 17.)

2. Wilmington Trust is a national banking association chartered under the laws of the United States, with its main office in Wilmington, Delaware, and appears here in its capacity as successor agent and successor security trustee for the syndicated lenders on the loans made to D Whale Corporation, G Whale Corporation, and H Whale Corporation. (James Aff. ¶ 3.)

3. Effective August 25, 2014, Wilmington Trust entered into assignment and adoption of rights agreements whereby it succeeded Mega International Commercial Bank Co., Ltd. ("Mega Bank"), as agent and security trustee with respect to certain indebtedness regarding D Whale Corporation; it succeeded Mega Bank and CTBC Bank Co., Ltd. (f/k/a Chinatrust Commercial Bank Co., Ltd.) ("CTBC"), as agent and security trustee, respectively, with respect to certain indebtedness regarding G Whale

3

Corporation; and it succeeded Mega Bank and First Commercial Bank Co., Ltd. ("First Bank"), as agent and security trustee, respectively, with respect to certain indebtedness regarding H Whale Corporation. (James Aff. ¶ 4; James Exs. 16–18.)[2]

4. On August 28, 2014, Wilmington Trust filed a notice of these assignments with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") in Case 13-33763. (Kelley Decl. ¶ 3; Kelley Ex. 1 (Bankr. ECF No. 2151).)[3]

5. On December 1, 2014, Mega Bank and Wilmington Trust caused notice of these agency and security trustee assignments to be given to Mr. Su. (James Aff. ¶ 7; Kelley Decl. ¶¶ 4–5; Kelley Exs. 2–3.)

## II.    The Facility Agreements and Guaranties

6. In a Facility Agreement dated September 28, 2010, various financial institutions loaned an aggregate of $91,600,000 to D Whale Corporation for the construction and purchase of a maritime cargo vessel known as the *M.V. D Whale* (the "D Whale Facility Agreement"). (James Ex. 1.) Similarly, in a Facility Agreement dated March 9, 2011, various financial institutions loaned an aggregate of $90,000,000 to G Whale Corporation for the construction and purchase of a maritime cargo vessel known as the *M.V. G Whale* (the "G Whale Facility Agreement"). (James Ex. 3.) And, in a Facility Agreement dated June 7, 2011, various financial institutions loaned an aggregate of $90,000,000 to H Whale Corporation for the construction and purchase of a maritime

---

[2]   All references to "James Ex." are references to those exhibits attached to the *Affidavit of Joshua G. James in Support of Wilmington Trust, National Association's Motion for Summary Judgment* filed substantially contemporaneously herewith.

[3]   All references to "Kelley Ex." are references to those exhibits attached to the *Declaration of Charles S. Kelley in Support of Wilmington Trust, National Association's Motion for Summary Judgment* filed substantially contemporaneously herewith.

4

cargo vessel known as the *M.V. H Whale* (the "H Whale Facility Agreement"). (James Ex. 5.)

7. Mr. Su is a guarantor under and signatory to three separate "Guarantee" Agreements (i) dated September 28, 2010, under the D Whale Facility Agreement (the "D Whale Guarantee") (James Ex. 2), (ii) dated March 9, 2011, under the G Whale Facility Agreement (the "G Whale Guarantee") (James Ex. 4), and (iii) dated June 7, 2011, under the H Whale Facility Agreement (the "H Whale Guarantee") (James Ex. 6).

8. Mr. Su entered into each of these Guarantees in his personal capacity, and thus represented (in each) as follows: "Mr. Hsin Chi Su hereby expressly confirms that he is issuing this Guarantee independently and not as a director, supervisor or any other capacity with representative authority of TMT or the [D, G, or H Whale Corporation], and that his liability hereunder shall not be limited by Article 753-1 of the [Republic of China] Civil Code." (James Exs. 2, 4, and 6, at ¶ 3(r), respectively.)

9. In each respective Guarantee, Mr. Su "irrevocably, absolutely and unconditionally guarantee[s], . . . as a primary obligor and not merely as a surety, the due, punctual and full payment of any and all indebtedness and the due and punctual performance of all other obligations of [the D, G, or H Whale Corporation] under" the respective Facility Agreement, "whether as principal, interest, fees or otherwise, including, without limitation, all costs and expenses of enforcement or preservation of the rights" of the parties to that Agreement. (James Exs. 2, 4, and 6, at 1–2, respectively.)

10. Mr. Su also agreed in each respective Guarantee that he would, "[i]n the event of non-payment by the [D, G, or H Whale Corporation] of any of the

Obligations when due, . . . pay[] the unpaid amount to [the Agent] . . . to such account and in such place as the Agent may from time to time designate . . . , together with interest thereon from the date of demand to the date of actual payment thereof at the default interest rate as specified in the [D, G, or H Whale] Facility Agreement, free and clear of and without set-off or deduction for taxes or otherwise." (James Exs. 2, 4, and 6, at ¶ 2(a), respectively.)

11.   On August 28, 2014, Wilmington Trust became the Agent under the D, G and H Whale Facility Agreements and is the party entitled to sue to enforce the Guarantee related thereto. (James Aff. ¶¶ 4–7.)

**III.   The Principal Debtors' Defaults Under the Facility Agreements**

12.   On April 3, 2013, Mega Bank sent a Notice of Default and Acceleration to D Whale Corporation, among others.  (James Aff. ¶ 8; James Ex. 7.)  On April 1, 2013, Mega Bank sent a Notice of Default and Acceleration to G Whale Corporation, among others. (James Aff. ¶ 10; James Ex. 8.)  On April 16, 2013, Mega Bank sent a Notice of Default and Acceleration to H Whale Corporation, among others. (James Aff. ¶ 12; Ex. 9.)

13.   The respective borrowers—the D, G and H Whale Corporations—had defaulted under each of their Facility Agreements on account of certain payment defaults.  (James Exs. 7–9.)  Each default constituted an "Event of Default" under the respective Facility Agreements, and each Event of Default had occurred and was continuing as of the dates on which the Agent, on behalf of the lenders, duly accelerated and declared that all of the loans and all other amounts under the respective finance documents were immediately due and payable. (James Exs. 7–9.)

6

14. In the Notices of Default and Acceleration, Mega Bank demanded that D Whale Corporation immediately repay the then-principal outstanding sum of $73,280,000 plus interest, G Whale Corporation immediately repay the then-principal outstanding sum of $76,500,000 plus interest, and H Whale Corporation immediately repay the then-principal outstanding sum of $76,500,000 plus interest. (James Exs. 7–9.)

15. None of the borrowers complied in any respect with the demands to immediately repay the principal outstanding sums, plus interest. (James Aff. ¶¶ 9, 11, 13.) None of the guarantors complied either. (James Aff. ¶¶ 9, 11, 13.)

**IV.   The Entry of Payment Orders on the Guarantees in Taiwan**

16. In or about April 2013, applications for the issuance of payment orders against Mr. Su, in his personal capacity as guarantor, with respect to his liabilities under the Guarantees, were submitted to the Taipei District Court in the Republic of China (Taiwan) (the "ROC Court"). (Huang Decl. ¶ 7.)

17. The ROC Court thereafter issued payment orders (the "Payment Orders") setting forth (i) the parties and their statutory representatives, (ii) the object of the claims and the amounts thereof, and (iii) the legal relationships/facts giving rise to such claims, among other things. (Huang Decl. ¶ 13, James Exs. 19–21.)

18. In accordance with ROC law, the ROC Court served the payment orders on Mr. Su and afforded him an opportunity to object. (Huang Decl. ¶¶ 9, 22.) Had Mr. Su objected, civil proceedings under ROC law would have been deemed commenced. (Huang Decl. ¶ 10.) Mr. Su, however, did not object to the payment orders. (Huang Decl. ¶¶ 22–24). Accordingly, the ROC Court issued final certificates ("Final Certificates") confirming that the payment orders became final and conclusive under ROC law. (Huang Decl. ¶ 25.)

19. The Payment Order with respect to the D Whale Guarantee was issued on May 1, 2013, was delivered on May 17, 2013, and affirmed on June 7, 2013. (Huang Decl. ¶ 14.) The ROC Court issued the relevant Final Certificate on June 18, 2013. (Huang Decl. ¶ 14.)

20. The Payment Order with respect to the G Whale Guarantee was issued on May 3, 2013, was delivered on May 10, 2013, and affirmed on May 30, 2013. (Huang Decl. ¶ 15.) The ROC Court issued the relevant Final Certificate on June 18, 2013. (Huang Decl. ¶ 15.)

21. The Payment Order with respect to the H Whale Guarantee was issued on May 3, 2013, was delivered on May 9, 2013, and affirmed on May 30, 2013. (Huang Decl. ¶ 16.) The ROC Court issued the relevant Final Certificate on July 5, 2013. (Huang Decl. ¶ 16.)

**V.     Enforcement Proceedings in Taiwan Pursuant to the Payment Orders**

22. Legal proceedings have been commenced in the ROC Court against Mr. Su in his personal capacity to enforce the Payment Orders (the "Payment Order Enforcement Proceedings"). (Huang Decl. ¶¶ 17–20.)

23. The court files from the Payment Order Enforcement Proceedings reflect that the ROC Court has provided Mr. Su with notice of the material events in those proceedings and that Mr. Su's Taiwanese counsel several times applied to the Taiwan Taipei District Court to review the court files. (Huang Decl. ¶¶ 22–23.)

24. The court files from the Payment Order Enforcement Proceedings do not reflect that Mr. Su or anyone acting on his behalf has at any point raised any objections in those proceedings (other than to the floor price set by the court for public auction of Mr. Su's real property in Taipei). (Huang Decl. ¶ 24.)

8

25. The applications to enforce the Payment Orders and Final Certificates are currently pending before the ROC Court, which to date has not raised any issues with respect to the validity or enforceability of the Payment Orders and Final Certificates. (Huang Decl. ¶ 25.)

**VI.  The Principal Debtors' Commencement of Bankruptcy Proceedings**

26. On June 20, 2013, D Whale Corporation, G Whale Corporation, and H Whale Corporation each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code in the Bankruptcy Court. (Kelley Ex. 4.)

27. As of the date of this motion, none of these borrowers has repaid all amounts outstanding under their respective Facility Agreements. (James Aff. ¶¶ 9, 11, 13.)

**VII.  Amounts Due Under the Facility Agreements and Guarantees**

*Amounts Due under the D Whale Facility Agreement Guarantee*

28. On July 18, 2014, the Bankruptcy Court entered an order approving the sale of the *M.V. D Whale* free and clear of claims and interests pursuant to 11 U.S.C. § 363 in the amount of $61,250,000, of which $60,972,250 was payable or creditable against the outstanding indebtedness under the Facility Agreement.[4] (Kelley Ex. 5 at ¶ F.) On that date, the aggregate outstanding principal amount under the D Whale Facility Agreement was $73,280,000. (James Aff. ¶ 14.)

29. As of the date of filing of this motion, not less than $15,887,114.45 remains outstanding and unpaid under the D Whale Facility Agreement, inclusive of principal, accrued and unpaid interest (including default interest) and certain fees, costs

---

[4] Differences in purchase price and applicable proceeds to the first priority mortgage to the lenders are certain transaction costs that were paid by the purchasers in cash and were not amounts that were applied to reduce the indebtedness.

9

and expenses related to the enforcement of the rights of the lenders, but exclusive of certain other fees, costs and expenses related to the enforcement of the rights of the lenders. (James Aff. ¶ 16.)  This amount is therefore also owed under the Guarantee, together with continuing interest, fees, costs and expenses incurred by the lenders related to enforcement of their rights under these agreements.

### *Amounts Due under the G Whale Facility Agreement Guarantee*

30. On July 18, 2014, the Bankruptcy Court entered an order approving the sale of the *M.V. G Whale* free and clear of claims and interests pursuant to 11 U.S.C. § 363 in the amount of $61,250,000 of which $60,966,700 was payable or creditable against the outstanding indebtedness under the Facility Agreement. (Kelley Ex. 6 at ¶ F.)  As of the date of the Bankruptcy Court's order, the aggregate outstanding principal amount under the G Whale Facility Agreement was $76,500,000. (James Aff. ¶ 17.)

31. As of the date of filing of this motion, not less than $18,215,665.52 remains outstanding and unpaid under the G Whale Facility Agreement, inclusive of principal, accrued and unpaid interest (including default interest) and certain fees, costs and expenses related to the enforcement of the rights of the lenders, but exclusive of certain other fees, costs and expenses related to the enforcement of the rights of the lenders.  (James Aff. ¶ 19.)  This amount is therefore also owed under the Guarantee, together with continuing interest, fees, costs and expenses incurred by the lenders related to enforcement of their rights under these agreements.

### *Amounts Due under the H Whale Facility Agreement Guarantee*

32. On July 18, 2014, the Bankruptcy Court entered an order approving the sale of the *M.V. H Whale* free and clear of claims and interests pursuant to 11 U.S.C. § 363 in the amount of $62,000,000, of which $61,693,750 was payable or creditable against the outstanding indebtedness under the Facility Agreement. (Kelley Ex. 7 at ¶ F.) As of that date, the aggregate outstanding principal amount under the H Whale Facility Agreement was $76,500,000. (James Aff. ¶ 20.).

33. As of the date of filing of this motion, not less than $19,771,276.98 remains outstanding and unpaid under the H Whale Facility Agreement, inclusive of principal, accrued and unpaid interest (including default interest) and certain fees, costs and expenses related to the enforcement of the rights of the lenders, but exclusive of certain other fees, costs and expenses related to the enforcement of the rights of the lenders. (James Aff. ¶ 22.) This amount is therefore also owed under the Guarantee, together with continuing interest, fees, costs and expenses incurred by the lenders related to enforcement of their rights under these agreements.

34. Interest continues to accrue on each of these outstanding unpaid amounts at the applicable rates and terms set forth in the Facility Agreements.

## VIII. Demand for Payment on Mr. Su

35. Demand for payment under each Guarantee was made on Mr. Su pursuant to the D Whale Guarantee on April 8, 2013, the G Whale Guarantee on April 2, 2013, and the H Whale Guarantee on April 17, 2013, respectively. (James Exs. 10–12; James Aff. ¶¶ 8, 10, 12.)

## IX. Mr. Su's Failure to Pay

36. Mr. Su has failed to pay any of the amounts outstanding under (i) the D Whale Facility Agreement and the D Whale Guarantee, (ii) the G Whale Facility

11

Agreement and the G Whale Guarantee, and (iii) the H Whale Facility Agreement and the H Whale Guarantee. (Wilmington Trust's Cls. at ¶¶ 17, 21 and 26; admitted in Mr. Su's Answer at ¶¶ 49, 56 and 64; James Aff. ¶¶ 9, 11, 13.)

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if the "'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Medlock* v. *Ace Cash Exp., Inc.*, 589 F. App'x 707, 708 (5th Cir. 2014) (quoting *Royal* v. *CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, the onus shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

## ARGUMENT

### I. Wilmington Trust Is Entitled to Summary Judgment on Its Counterclaims

All three guarantees at issue in this matter are governed by the laws of the Republic of China ("ROC"). (James Exs. 2, 4, and 6 at ¶ 3(o), respectively.) To prevail on a claim to enforce a guarantee under ROC law, a plaintiff must show: (1) execution of a legally valid, binding and enforceable guarantee; (2) the principal debtor's failure to

perform its obligations; and (3) the creditor's valid demand for performance of the guarantee obligation in accordance with the terms and conditions of the guarantee. (Huang Decl. ¶ 4.)[5]

Each of these elements is met in this case. In particular, there is no genuine dispute as to any of the following material facts:

- Mr. Su duly executed the D Whale Guarantee, the G Whale Guarantee and the H Whale Guarantee. (*See supra* ¶¶ 7–10.)

- The D Whale Guarantee, the G Whale Guarantee and the H Whale Guarantee are legally valid, binding and enforceable. (*See id*.)

- D Whale Corporation, G Whale Corporation and H Whale Corporation have all defaulted on their obligations under the facility agreement to which each is a party. (*See supra* ¶¶ 12–13.)

- Wilmington Trust's predecessors-in-interest, Mega Bank, CTBC, and First Bank, made valid demands on Mr. Su for performance of his obligations under the D Whale Guarantee, the G Whale Guarantee and the H Whale Guarantee, and as successor agent and successor security trustee, Wilmington Trust is entitled to pursue collection thereunder. (*See supra* ¶¶ 11, 14–15, 35.)

- Mr. Su has failed to perform under the D Whale Guarantee, the G Whale Guarantee and the H Whale Guarantee. (*See supra* ¶ 36.)

- A court of appropriate jurisdiction in the Republic of China (Taiwan) has issued final and conclusive payment orders on the D Whale Guarantee, the G Whale Guarantee and the H Whale Guarantee. (*See supra* ¶¶ 16–21.)

Accordingly, Wilmington Trust has met its burden of showing the absence of any genuine dispute of material facts relevant to its counterclaims in this action and, under ROC law, is entitled to judgment as a matter of law on those counterclaims.

---

[5] The elements to prevail on a claim to enforce a guarantee under ROC law are substantially similar to the elements necessary to prevail on such a claim under state law in the United States. *See, e.g.*, *WestRM-West Risk Mkts.* v. *Lumbermens Mut. Cas. Co.*, 314 F. Supp. 2d 229, 232 (S.D.N.Y. 2004) (New York law) ("In cases involving notes, guaranties, and surety bonds, an obligee establishes its prima facie case by demonstrating the execution of the obligation at issue, the underlying agreement, and the defendant's failure to pay.").

## CONCLUSION

For the reasons set forth above, Wilmington Trust respectfully requests that this Court grant Wilmington Trust's motion for summary judgment and enter judgment in favor of Wilmington Trust, as successor agent and successor security trustee for the lenders, in the amount of $15,887,114.45 as of April 20, 2015, on the D Whale Guarantee counterclaim, plus continuing interest, fees, costs and expenses; $18,215,665.52 as of April 20, 2015, on the G Whale Guarantee counterclaim, plus continuing interest, fees, costs and expenses; and $19,771,276.98 as of April 20, 2015, on the H Whale Guarantee counterclaim, plus continuing interest, fees, costs and expenses; for a total judgment of $53,874,056.95 as of April 20, 2015, plus continuing interest, fees and other costs and expenses.

Dated: April 20, 2015               Respectfully Submitted,


                                    **MAYER BROWN LLP**

                                    /s/ Charles S. Kelley
                                    Charles S. Kelley (Attorney-in-Charge)
                                    Texas State Bar No. 11199580
                                    700 Louisiana Street, Suite 3400
                                    Houston, Texas 77002-2730
                                    (713) 221-1651 (telephone)
                                    (713) 224-6410 (facsimile)

                                    *Attorneys for Wilmington Trust, National Association, as successor agent and successor security trustee*

Of Counsel:
Frederick Hyman
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500 (telephone)
(212) 262-1910 (facsimile)

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2015, a true and correct copy of the foregoing document was served by the Electronic Case Filing system for this Court, which gives notice to all parties who have requested ECF notification of this proceeding.

/s/ Charles S. Kelley
Charles S. Kelley