| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

| | |
|---|---|
| **Hsin Chi Su,** § | |
| § | |
| **Plaintiff,** § | |
| *versus* § | **Civil Action H-14-2166** |
| § | |
| **Mega International** § | |
| **Commercial Bank Co., Ltd.,** *et al.* § | |
| § | |
| § | |
| **Defendants.** § | |

**PLAINTIFF HSIN CHI SU'S OBJECTION TO WILMINGTON TRUST, NATIONAL
ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT**
[Relates to Doc. No. 80]

                        HOOVER SLOVACEK LLP
                        */s/ Brendetta A. Scott*
                        BRENDETTA A. SCOTT
                        State Bar No. 24012219
                        Galleria Tower II
                        5051 Westheimer, Suite 1200
                        Houston, Texas 77056
                        Telephone: 713-977-8686
                        Facsimile:  713-977-5395
                        Email: scott@hooversovacek.com

                        **ATTORNEY FOR HSIN CHI SU**

OF COUNSEL:
HOOVER SLOVACEK LLP
Edward L. Rothberg
State Bar No. 17313990
Deirdre Carey Brown
State Bar No. 24049116
Annie E. Catmull
State Bar No. 00794932
TX Federal ID: 570838
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713-977-8686
Facsimile: 713-977-5395

{851208-00011 BAS 5/11/2015 00964198.DOCX 1}

## **TABLE OF CONTENTS**

I.   Introduction -------------------------------------------------------------------------------- 3
II.  Statement of Disputed Facts ---------------------------------------------------------- 4
   *Insufficient Facts to Support Standing* ----------------------------------------------- 4
   *Factual Dispute Whether there was a Proper Assignment of the Guarantees* ------------------ 5
   *Change of Circumstances* ------------------------------------------------------------- 9
   *Lack of Factual Proof that Wilmington Mitigated Damage* --------------------------------- 10
   *Lack of Good Faith* ------------------------------------------------------------------- 10
III. Legal Authorities and Arguments ------------------------------------------------------ 11
IV.  Objections ---------------------------------------------------------------------------- 14
V.   Summary-Judgment Evidence --------------------------------------------------------- 14
VI.  Conclusion ---------------------------------------------------------------------------- 15

# TABLE OF AUTHORITIES

Cases

Celotex Corp. v. Catrett, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........ 11
*Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008) ................................................................ 12
*Corley v. Prator,* 290 F. App'x 749, 754 (5th Cir. 2008) ............................................................. 14
*Ienco v. Angarone*, 429 F.3d 680, 684-85 (7th Cir. 2005) ............................................................ 14
Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005) .............................................. 11
Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) ..................................................... 12
*Perkins v. Bank of Am.,* No. 14-20284, 2015 WL 64870, at *3 (5th Cir. Jan. 6, 2015) ................ 14
*Shaboon v. Duncan,* 252 F.3d 722, 736 (5th Cir. 2001) ................................................................ 14
*Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) ......................................... 12

Other Authorities

Article 148 of the Civil Code of Taiwan ...................................................................................... 13
Article 227-2 of the Civil Code of Taiwan .................................................................................. 13
Article 247-1 of the Civil Code of Taiwan .................................................................................. 13
Article 72 of the Civil Code of Taiwan ........................................................................................ 13
Taiwan High Court Kaohsiung Branch judgment under docket (95) Shang-Zi No. 82 ............... 13
Taiwan High Court Taichung Branch under docket (96)Zhong-Shang-Zi No.118 ...................... 13
Taiwan Supreme Court under docket (94) Tai-Shang-Zi No. 2367 ............................................. 13

| | |
|---|---|
| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

| | | |
|---|---|---|
| **Hsin Chi Su,** § § | | |
| **Plaintiff,** § § | | |
| *versus* § § | | **Civil Action H-14-2165** |
| **Mega International** § | | |
| **Commercial Bank Co., Ltd.,** *et al.* § § § | | |
| **Defendants.** § | | |

**PLAINTIFF HSIN CHI SU'S OBJECTION TO WILMINGTON TRUST, NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT**
[Relates to Doc. No. 94]

I.   Introduction

Plaintiff/Counter-Defendant Hsin Chi Su ("Mr. Su") objects to Wilmington Trust, National Association's ("Wilmington") motion for summary judgment because:

i) Wilmington has not established it has standing since the summary judgment evidence fails to include key documents such as the alleged Deed of Assignments and the Joint and Several Creditor Agreements ("JSC"); ii) the amount due under the loan Facility Agreements are under the exclusive jurisdiction of Hong Kong and the Guarantees specifically set forth that the obligations under the Guarantees refer to the Facility Agreements and JSC; iii) the recognition and enforcement of any action under the Guarantees is to be in the Republic of China (Taiwan) and is governed by the laws of Taiwan; iv) Mr. Su asserted no amount is owing under the Answer and in his attached Declaration, attached as Exhibit A, thereby creating a factual dispute and has further asserted that the lack of good faith in the sale of the vessels and the use of his patent rights satisfied any obligation in full and/or, alternatively, voided the obligations; v) Wilmington Trust has provided insufficient proof to establish any amount is owing under the guarantees; vi) there is a

{851208-00011 BAS 5/11/2015 00964198.DOCX 1}         3

factual dispute as to whether the guarantees are void or ineffective based on the change of circumstances and lack of good faith of the lenders; vii) Wilmington has failed to provide key documents to establish any amount owing including it has not provided the alleged deed of assignment, the JSC, statements of account, payment history or calculation of the amounts alleged to be owed; vii) Wilmington Trust has not established as a matter of law that summary judgment is appropriate; and, viii) the motion for summary judgment is premature as no discovery has occurred in the pending case and the sale orders for the vessels which allowed for this litigation are still on appeal.  Change of Circumstances is a defense under Republic of China ("ROC") Law. *See,* Declaration of Kevin Lin, Exhibit B.

Mr. Su asks the court to deny Wilmington's Motion for Summary Judgment (Doc. No. 80) ("Motion") because Wilmington failed to prove that there is no genuine issue of material fact as to the amount due, if any, on the guarantees and failed to establish as a matter of law that summary judgment is appropriate.

II.     Statement of Disputed Facts

*Insufficient Facts to Support Standing*

1.      Wilmington has failed to establish it has standing to assert a claim as an agent or otherwise and/or whether Wilmington properly qualified as an agent under the Facility Agreements and Joint and Several Creditor Agreements. In fact, the Joint and Several Creditor Agreements were not included with Wilmington's Motion.  Wilmington is not a party to the Guarantees and has not furnished sufficient proof to show it has any interest.

2.      Mr. Su signed the Guarantees. However, since signing the Guarantees the debts have been sold to different lenders.  This raises a mixed issue of fact and law as to whether the Guarantees are void due to the change in circumstances.

3.      In its preliminary statement in the Motion for Summary Judgment, Wilmington is defined as Agent and further states that "[T]he defined term 'agent' shall refer to Wilmington Trust or its predecessor in interest, Mega Bank, CTBC, and First Bank (each as defined herein), as appropriate." *See,* Doc. No. 80, p. 4, FN 1.  Wilmington is the only party asserting a counter-claim.  As such, the definitional term in the Motion referring to "Agent" means Wilmington or Mega Bank, CTBC, and First Bank.  Therefore, the definition, itself, raises a fact issue. Mega Bank, CTBC, and First Bank are not parties to the counter-claim. The counter-claim was filed exclusively by Wilmington.  Wilmington cannot personally attest to the actions of Mega Bank, CTBC, and First Bank. As such, any reference in the Motion or related exhibits to "Agent" raises a factual dispute.

*Factual Dispute Whether there was a Proper Assignment of the Guarantees*

4.      The Motion fails to show that Wilmington is a proper assignee of the Guarantees or that the requirements under the loan documents were satisfied. This creates a fact issue as to whether there were proper assignments. The notice of assignment attached to the declaration at Doc. No. 82 do not provide sufficient evidence to prove the assignments were proper. For example, the Declaration of Charles Kelley and exhibit thereto reference a reputed Deed of Assignment and Successor Agent Agreement which was not included with the evidence attached to the Motion. *See,* Doc. No. 82. The failure to include the documents as evidence further highlights that discovery remains to be done and that there are material facts in dispute.

5.      Wilmington contends it was assigned as the Agent in August 2014, which was after the sale of the D Whale, G Whale, and H Whale and after the original complaint was filed in this case.  As such, there is a dispute of fact as to whether Wilmington's counter-claim is asserted with good faith under ROC law which governs the terms of the Guarantees because Wilmington was

allegedly assigned the interest after it knew or should have known: i) that there was litigation over an equitable adjustment to the lenders' claims related the loan documents; and, ii) the sales of the vessels free and clear of Mr. Su's patent rights were alleged to effectively be an attempt to take certain rights Mr. Su had related to the patents. Such action conflicted with the express terms of the Guarantees which required any action against the Guarantors to be recognized and enforced under ROC law in Taiwan. *See,* Doc. No. 81-2, ¶ 3(o); Doc. No. 81-4, ¶ 3(o); and Doc. No. 81-6, ¶ 3(o).

6. Mr. Su is a citizen of Taiwan whose residence is in Taiwan. He does not maintain a residence in Houston. He has traveled to Houston for business and at one time, through one of his entities, leased a short term rental of a condominium to be able to attend and prepare for hearings related to litigation pending in Houston.

7. There is also a factual dispute as to whether Wilmington is a holder of or acquired an interest in the Obligations, as Obligations are defined in the Guarantee. *See,* Doc. No. 81-2, ¶11; Doc. No. 81-4, ¶11; Doc. No. 81-6, ¶11 (for an assignment of the Guarantee it must be to a "person or entity holding or acquiring an interest in the Obligations in accordance with the terms of the Facility Agreement."). There is no evidence that Wilmington held or acquired an interest in the Obligations which would qualify it as a potential assignee under the Guarantee. If Wilmington does has an interest, which Mr. Su disputes, it is unknown what percentage is held. Stated another way, Wilmington may not be owed any money based on the insufficient information provided. This is another material fact issue.

*8.* There is insufficient summary judgment evidence to show Wilmington was a holder of any interest or acquired any interest. This raises a material issue of fact in dispute. In fact, on appeal of the D Whale, G Whale, and H Whale Sale Order, it was alleged that OCM owned almost

entirely the debt. *See,* Case. No. 14-2172, Appellee's Brief, Doc. No. 43 and Joinder by OCM, Doc. No. 46. Additionally, the credit bids did not comply with 11 U.S.C. § 363(k). Since the Alleged Purchasers did not have a secured claim, Mr. Su asserts that the alleged credit bids violated 363(k) and lacked good faith. There were no documents filed with the Bankruptcy Court showing any transfer of claim or assignment of the highest and best bid rights to OCM. *See,* Case. No. 14-2172, Appellant's Brief, Doc. No. 39. This creates factual issues as to what percentage, if any, Wilmington acquired. Therefore, OCM is estopped from taking a position that Mr. Su's equitable adjustment claims do not apply because such a position is contrary to OCM's position that the sale of the Whales were valid sales.

*Factual Dispute Regarding Amount*

9. The amounts Wilmington alleges that Mr. Su is liable for under the Guarantees are disputed. The amounts in the Motion conflict with the amount in the D Whale, G Whale, and H Whale Sale Orders. *See*, Bankruptcy Case No. 13-33673, Doc. Nos. 1944, ¶F; 1946, ¶F; and 1948, ¶F. Further, the amounts alleged in the counter-claim (Doc. No. 10) do not match the amounts in the Sale Orders or the Motion.

10. Paragraph 4 of each of the Guarantees state that "Each of the ROC Guarantors hereby irrevocably and unconditionally undertakes the covenants to the Finance Parties so long as any of the Obligations remain outstanding…" *See*, Affidavit to Motion, Doc. Nos. 81-2, p.9; 81-4, p.10; and 81-6, p.10. "Obligations" are defined generally in D Whale Guarantee as the obligations under the Facility Agreement and the Joint Several Creditor Agreement ("JSC"). *See,* Doc. No. 81-2, p.3. Obligations" are defined generally in the G Whale and H Whale Guarantees as the obligations any of such agreements and all other agreements, instruments and transactions hereby and thereby contemplated under the Facility Agreement and the Joint and Several Creditor. This includes the Facility Agreement and JSC, *See* Doc. Nos. 81-4, p.3-4 and 81-6, p.3-4. The JSC

{851208-00011 BAS 5/11/2015 00964198.DOCX 1}    7

Agreements were not included in the summary judgment evidence submitted by Wilmington.

11.     Further, no determination has been made under the Finance Agreements since the sale of the D Whale, G Whale, and H Whale of any amount outstanding. Paragraphs 29 of each of the Facility Agreements set forth the priority of payments and how partial payments are to be applied. *See,* Doc. Nos. 81-1, 81-3, and 81-5. Nothing in the Motion shows the calculation for the amounts alleged to be owing and the component parts for the total amounts.

12.     Further, given the appeal of the D Whale, G Whale, and H Whale Sale Orders and undetermined equitable claims asserted in the complaints, it is premature, at best, to allege any amounts are due under the Guarantees.

13.     The declaration provided by Mr. Huang (Doc. No. 83) also shows that Wilmington's counter-claim is improper. The Huang Declaration supports the premise that the lenders' efforts to strip away Mr. Su's patent rights through a 363 sale in the United States constitutes improper attempts to enforce what Wilmington contends were final payment orders ("Payment Orders") issued in the ROC. The Huang Declaration suggests that Wilmington, Mega, CTBC Bank Co., Ltd. (formerly known as Chinatrust Commercial Bank Co., Ltd.), and First Commercial Bank knew that the Guarantees required any action related to recognition or enforcement of the Payment Orders against Mr. Su had to be in Taiwan*. See,* Doc. Nos. 81-2, 81-4, and 81-6, Guarantees, ¶3(o) ("<u>Governing Law and Judgement</u>"). The choice of the laws of ROC as the governing law of the JSC Agreements, the Guarantees and the Promissory Notes **will be recognized and enforced in the ROC**. Any final and conclusive judgment obtained in the courts of the ROC in relation to the JSC Agreements, the Guarantees and the Promissory Notes ("P Note") **will be recognized and enforced in the ROC**.")(*emphasis added*). The lenders never attempted to enforce the judgment against Mr. Su's patents in Taiwan. However, Mega did take action to

obtain proceeds from the sale of Mr. Su's house in Taiwan. Based on Wilmington's position in the Motion and supporting Huang Declaration regarding the Payment Order, the counter-claim were improperly asserted in the United States in contravention of the express terms of the Guarantees which require the recognition and enforcement of any final judgment to be in the ROC.

14. Mr. Su has also asserted that since he was prevented from pursuing his patent rights or infringement claims against the D Whale, G Whale, and H Whale owners and that the lenders received a benefit of $50 million to $100 million per Whale at his expense. As such, no Obligations could remain owing under the loan documents or Guarantee because the buyers, alleged credit bidders, recovered substantially more than the value of the vessels by requiring a sale free and clear of Mr. Su's patent rights. Therefore, the Obligations which are the subject of the Guarantees were satisfied in full plus Mr. Su should be compensated for the value of his patent rights.

*Change of Circumstances*

15. Mr. Su also asserts that since OCM purportedly purchased almost the entire debt for a fraction of the alleged amounts due at the time the debts were purchased and given that the credit bids are presumably more than OCM paid for the debts, then the change in circumstances warrants the Guarantees being deemed of no effect under ROC law.

16. The sale of the D Whale, G Whale, and H Whale free and clear of Mr. Su's patent rights is also a change of circumstances that warrants denying anything under the Guarantees pursuant to ROC law.

17. Mr. Su did not expect that his personal patents would be wrongfully seized by selling the Whales and that he would then be sued for recovery on the guarantees, which are governed by foreign law. Mr. Su believes it is against public policy and morals pursuant to Taiwan law to allow collection of the Guarantees under such circumstances.

*Lack of Factual Proof that Wilmington Mitigated Damage*

18.     There is no proof or supporting documentation that Wilmington properly mitigated damages.  The Finance Agreements specifically requires an effort to mitigate damages. *See,* Doc. Nos. 81-1, ¶15; 81-3, ¶15, and 81-5, ¶15.

*Lack of Good Faith*

19.     It was reported that OCM purchased the debt at a discount. On information and belief, the credit bid for the D Whale, G Whale and H Whale were for more than the amount OCM supposedly paid for the debt.

20.     Mr. Su alleged that the sale of the Whales were tainted with collusion.  Since the sale hearings, more information has been learned further supporting the concerns that the parties were colluding to depress the values and oust Mr. Su from the shipping business.

21.     Since filing the appeal of the sales orders of the Whales, counsel for the Official Committee of Unsecured Creditors in the related TMT Procurement Bankruptcy, Seward & Kissel LLP, resigned. Seward & Kissel acknowledged the existence of a direct conflict by representing Mr. Su's adversary Lakatamia Shipping on actions related to the Vantage shares against the position that Seward & Kissel was taking for the Committee. Seward & Kissel has refused to acknowledge that Mr. Su's entity F5 Capital is the beneficial owner of shares in a public company, Star Bulk Carriers Corp.  In all cases, Mr. Bruce Paulsen was involved. Mr. Paulsen apparently worked closely with Hill Dickinson which was the counsel for Oceanbulk and Lakatamia – both parties which sought worldwide freezing injunctions against Mr. Su. In addition, evidence has been discovered showing that the broker on the Whales had questionable emails tracking Mr. Su and in one instance there is an email showing that someone had deep resentment to Mr. Su. In fact, the documents revealed that the resentment was due to amounts Clarkson alleged was owing to it

from Mr. Su which was apparently not properly disclosed by Clarksons in the Bankruptcy and which Mr. Su did not realize was still at issue.

22.     Further, it appears that Seward & Kissel represented an affiliate of OCM which was never disclosed by Seward & Kissel prior to its resignation.

23.     Mr. Su is continuing to discover information related to the efforts he believes were the product of collusion with various litigation tactics being orchestrated by various parties with the first action being taken by Petros Pappas on behalf of Oceanbulk with Seward and Kissel as its counsel and where Mr. Pappas sent Mr. Su a foreboding email in 2008 purportedly warning Mr. Su of "black angels."

24.     A Declaration from Mr. Su supporting the factual representations above and asserting affirmative defenses is attached hereto as **Exhibit A.**

25.     Mr. Su further requests that the Court take judicial notice of the pleadings cited to in the Bankruptcy Case (Case No. 13-33763) and the appeals pending before this Court related to the sale of the Whales.

### III. Legal Authorities and Arguments

26.     Summary judgment should be denied because there are material facts in dispute and because as a matter of law Wilmington's arguments fail. Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

27.     The movant bears the burden of identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

28. In the present case, the parties have not commenced discovery or even exchanged initial disclosures under Rule 26(a). Summary judgment is typically appropriate only "after adequate time for discovery." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). As such, summary judgment at this stage is premature.

29. The Motion is also premature because there are currently motions to abate the case on file where Mr. Su argues that the proper venue to assess the values and validity of the patent claims should be in the jurisdictions which issued the patents, Japan, China and Korea. *See,* Doc. No. 25. Further, a decision on the pending appeals of the Sale Orders could further impact this case. Summary Judgment is also premature because Mr. Su's Answer alleges that any claim of the lenders has been satisfied in full given the sale of the vessels free and clear of his patent rights and the specific finding by the Bankruptcy Court that an equitable claim may apply. Those issues have not been determined at this time and any alleged deficiency has not been determined. In fact, the Finance Agreements expressly provides that the exclusive jurisdiction for any dispute is in Hong Kong and the Finance Agreement is governed by English law. *See,* Doc. Nos. 81-1, ¶18.6; 81-3, ¶18.6; and 81-5, ¶18.6.

30. In addition, the Court should find it lacks subject matter jurisdiction over the Guarantees based on the allegations of Wilmington and the express provisions of the Guarantees providing that the enforcement and recognition under the Guarantees are under Taiwanese law and will be in Taiwan. *See,* Doc. Nos. 81-2, 81-4, and 81-6, Guarantees, ¶3(o).

31. Further, under Taiwanese law, there is a dispute as to whether Wilmington has a right to collect anything under the Guarantees. A Declaration on Taiwanese law from Kevin Lin ("Lin Declaration"), a Partner at Zhong Yin Law Firm, a law firm organized under the laws of the Republic of China ("ROC") is attached hereto and incorporated herein. *See,* Exhibit B. As shown by the Declaration of Mr. Lin, under Taiwanese law there are mixed issues of fact and law further establishing that summary judgment is inappropriate and/or that the case should be abated.

32. As shown by the Lin Declaration, under Taiwanese law, the Guarantees are potentially void because i) Wilmington lacked good faith in pursuing the Guarantees after the disputes related to the patents and sale of the Whales arose which preceded Wilmington's alleged assignment as the agent; ii) Wilmington has failed to provide anything showing it is a proper assignee; iii) it is against public policy to allow collection when Mr. Su's patent rights have been affected by the Sale Orders; iv) under the *bona fide* principle, set under ROC law, the guarantees should be considered void pursuant to Article 72, Article 148, and Article 247-1 of the Civil Code of Taiwan ("[I]f the guaranty contract contains no provision indicating the specific deadline and the exact amount of debts for which the guarantor is jointly and severally liable, the guaranty provided for the debts that have not been confirmed should be held invalid." **Taiwan High Court Kaohsiung Branch judgment under docket (95) Shang-Zi No. 82**; and v) the unpredictable change of circumstances, pursuant to Article 227-2 of the Civil Code, with the lenders requiring that a sale of the vessels be free and clear of Mr. Su's patents. *See* **Taiwan Supreme Court under docket (94) Tai-Shang-Zi No. 2367 and Taiwan High Court Taichung Branch under docket (96)Zhong-Shang-Zi No.118**.

33. The procedures used in the sale of the Whales where the broker, Clarksons, and the Committee's counsel, Seward and Kissel, as well as others failed to make required disclosures

further suggests the Guarantee should not be enforceable because such actions were against public policy and the improper acts of those actively engaged in the sale of the Whales arguably depressed the sale values; and, the Guarantee expressly provides that the Guarantee is to be recognized and enforced in Taiwan.  Therefore, summary judgment is not warranted in this case.

### IV.   Objections

34.    The court should deny Wilmington's motion for summary judgment because its complaint does not allege all the elements of its claim and therefore does not support its motion for summary judgment. *See Ienco v. Angarone*, 429 F.3d 680, 684-85 (7th Cir. 2005).

35.    The court should deny Wilmington's motion for summary judgment because the affidavits and declarations attached are not based on personal knowledge, fail to state facts as would be admissible in evidence (i.e., hearsay and/or conclusory); and fail to affirmatively demonstrate that the affiants or declarants are competent to testify to the matters stated in the affidavits or declarations.  For instance, Joshua G. James' Affidavit in support of Wilmington's Motion fails to state his position with Wilmington.  It merely states that Mr. James is an officer of Wilmington.  *See,* Doc. No. 81, ¶2.  Also, the affidavit fails to lay the proper foundation for business records for the documents attached and is therefore conclusory  "Unsupported affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Shaboon v. Duncan,* 252 F.3d 722, 736 (5th Cir. 2001) (alteration in original); *See also Perkins v. Bank of Am.,* No. 14-20284, 2015 WL 64870, at *3 (5th Cir. Jan. 6, 2015) (per curiam); *Corley v. Prator,* 290 F. App'x 749, 754 (5th Cir. 2008) (per curiam).

### V.   Summary-Judgment Evidence

36.    In support of Mr. Su's response, Mr. Su includes the following evidence in the

{851208-00011 BAS 5/11/2015 00964198.DOCX 1}        14

attached Exhibits:

> Exhibit A - The declaration of Hsin Chi Su establishes numerous material fact issues.
>
> Exhibit B- The declaration of Kevin Lin establishes additional fact issues and a concerns with subject matter jurisdiction.

## VI. Conclusion

For the reasons set forth above, Mr. Su respectfully requests that this Court deny Wilmington's Motion for Summary Judgment because the Motion is premature and because Wilmington failed to prove that there is no genuine issue of material fact as to the amount due, if any, on the guarantees and failed to establish as a matter of law that summary judgment is appropriate.

DATED: May 11, 2015

Respectfully submitted,

HOOVER SLOVACEK LLP

By: */s/ Brendetta A. Scott*
BRENDETTA A. SCOTT
State Bar No. 24012219
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713-977-8686
Facsimile: 713-977-5395
Email: scott@hooversovacek.com

**ATTORNEY FOR HSIN CHI SU**

OF COUNSEL:
HOOVER SLOVACEK LLP
Edward L. Rothberg
State Bar No. 17313990
Deirdre Carey Brown
State Bar No. 24049116
Annie E. Catmull

{851208-00011 BAS 5/11/2015 00964198.DOCX 1}    15

State Bar No. 00794932
TX Federal ID: 570838
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713-977-8686
Facsimile: 713-977-5395

## **CERTIFICATE OF SERVICE**

    I hereby certify that on May 11, 2015, a true and correct copy of the foregoing Plaintiff/Counter-Defendant Hsin Chi Su's Memorandum Response in Opposition to Wilmington Trust, National Association's Motion for Summary Judgment and Brief in Support was served by the Court's ECF notification system to the parties listed below at the email addresses listed below.

                                      */s/ Brendetta A. Scott*
                                      Brendetta A. Scott

Annie E Catmull     catmull@hooverslovacek.com, ray@hooverslovacek.com

Carey D Schreiber     CSchreiber@winston.com, chardman@winston.com, dcunsolo@winston.com

Charles Stephen Kelley     ckelley@mayerbrown.com, bdsmith@mayerbrown.com, houstondocket@mayerbrown.com, mlotito@mayerbrown.com, sswihart@mayerbrown.com

Curtis W McCreight     mccreight@hooverslovacek.com

David William Parham     david.parham@bakermckenzie.com, julia.rogic@bakermckenzie.com

Deirdre Carey Brown     brown@hooverslovacek.com, bankruptcy1@hooverslovacek.com, deirdrecbrown@yahoo.com, thanos@hooverslovacek.com

Edward L Rothberg     rothberg@hooverslovacek.com, bankruptcy1@hooverslovacek.com, mayle@hooverslovacek.com, ray@hooverslovacek.com

Eli O Columbus     ecolumbus@winstead.com, lbayliss@winstead.com

Gregory Laufer     glaufer@paulweiss.com

Jason G Cohen     jason.cohen@bgllp.com

Rosa A Shirley     rosa.shirley@bakermckenzie.com, julia.rogic@bakermckenzie.com

Weiting Hsu     whsu@winstead.com

{851208-00011 BAS 5/11/2015 00964198.DOCX 1}     16