UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Hsin Chi Su,<br><br>            Plaintiff,<br>*versus*<br><br>Mega International<br>Commercial Bank Co., Ltd., *Et Al.*<br><br>           Defendants. | Civil Action H-14-2165<br>Civil Action H-14-2166 |

### DECLARATION OF HSIN CHI SU OBJECTING TO WILMINGTON TRUST'S MOTIONS FOR SUMMARY JUDGMENT

I, Hsin Chi Su, declare pursuant to 28 U.S.C. § 1746:

1.    I am over the age of 18 years and am fully competent to make this declaration. I am a Taiwanese citizen and am a resident of Taiwan also known as the Republic of China ("ROC").

2.    I am familiar with this case and make this declaration based on my personal knowledge.

3.    I never entered into a guarantee agreement with Wilmington Trust, National Association ("Wilmington"). Wilmington is not a party to the Guarantee related to the loans secured by the *M/V* C Whale, D Whale, G Whale or H Whale ("Whale Loans"). Wilmington has not furnished sufficient proof to show it has any interest or is a proper assignee of the guarantees.

4.    I signed guarantees for the Whale Loans which were all governed by the same form provisions.

5.    However, since signing the guarantees the debt has been sold to different lenders. It is my understanding that OCM Formosa Straight Holdings Ltd. ("OCM")

{851208-00011 BAS 5/8/2015 00963999.DOCX 1}

EXHIBIT A



purchased the Debt at a steep discount from the original lenders paying in the $50 million range to purchase the interest it has in each Whale.

6. Wilmington is the only party asserting counter-claims related to the Motion for Summary Judgments. The definitional term in the Motion referring to "Agent" means Wilmington or Mega International Commercial Bank Co., Ltd. ("Mega"). Mega is not a party to the counter-claim. The counter-claim was filed exclusively by Wilmington.

7. I have not seen any documents showing Wilmington was properly assigned an interest in the Guarantees – no deed of assignment was filed with the Motion for Summary Judgment. I do not believe that the Guarantees were properly assigned to Wilmington. I have not seen a deed of assignment or a successor agent agreement related to any of the loans that I signed a guarantee to support.

8. I filed my original complaint in this matter on July 28, 2014 which was before Wilmington purportedly became an agent.

9. There is also a factual dispute as to whether Wilmington is a holder of or acquired an interest in the Obligations, as Obligations are defined in the Guarantee. *See*, Doc. No. 95-2, ¶11 (for an assignment of the Guarantee it must be to a "person or entity holding or acquiring an interest in the Obligations in accordance with the terms of the Facility Agreement").

10. I have nothing showing that Wilmington was a holder of any interest or acquired any interest in the Guarantees.

11. I dispute the amount Wilmington alleges that Mr. Su is liable for under the Guarantee is disputed. Nothing should be owed.

12. Nothing in the Motion shows the calculation for the amount alleged to be owing

{851208-00011 BAS 5/8/2015 00963999.DOCX 1}



and the component parts for the total amount and I am not sure how OCM is coming up with the numbers they assert are due.

13. The sale of the Whales free and clear of my patent rights was an improper effort to use the bankruptcy to enforce on the Guarantees against me. Under the Guarantees, all enforcement efforts are supposed to be in Taiwan. By selling the vessel free and clear of my right to pursue my patents, I should owe nothing. In fact, the patent rights that were lost with the sale of the vessel could be valued as high as $50 million to $100 million. As such, no Obligations could remain owing under the loan documents or Guarantees.

14. The sale of the Whales free and clear of my patent rights presents a change of circumstances that did not exist when the loans were originally entered into. I never contemplated that Lenders would demand my personal patent rights in a 363 sale in a Bankruptcy.

15. I believe the credit bids for the purchase of the Whales were far less than what OCM paid for the debt.

16. I am learning more and more about the parties who worked together. I alleged that the Whale sales were tainted with collusion. Since the sale hearings, more information has been learned further supporting the concerns that the parties were colluding to depress the values and oust Mr. Su from the shipping business. Counsel for the Official Committee of Unsecured Creditors in the related TMT Procurement Bankruptcy, Seward & Kissel LLP, resigned. Seward & Kissel acknowledged the existence of a direct conflict by representing my adversary Lakatamia Shipping on actions related to the Vantage shares against the position that Seward & Kissel was taking for the Committee. Seward & Kissel has refused to acknowledge that my company F5 Capital is the beneficial owner of shares in a public company, Star Bulk Carriers

Corp. In all cases, Mr. Bruce Paulsen was involved against me. Mr. Paulsen apparently worked closely with Hill Dickinson which was the counsel for Oceanbulk and Lakatamia – both parties which sought worldwide freezing injunctions against me. In addition, evidence has been discovered showing that the broker on the Whales had questionable emails tracking me and in one instance there is an email showing that someone had deep resentment for me. In fact, the documents revealed that the resentment was due to amounts Clarkson alleged was owing to it from prior trades some of my companies handled.

17. Further, it appears that Seward & Kissel represented an affiliate of OCM which was never disclosed by Seward & Kissel prior to its resignation.

18. I am continuing to discover information related to the efforts I believes were the product of collusion with various litigation tactics being orchestrated by various parties. The first action was taken by Petros Pappas on behalf of Oceanbulk with Seward and Kissel as Star Bulk's counsel back in 2008. On June 12, 2008, Mr. Pappas sent me a foreboding email purportedly warning me of "black angels."

19. My Answer asserts numerous affirmative defenses which have not been addressed by the Motion. *See,* Doc. No. 59.

20. The amount alleged to be owing in the Motion for Summary Judgment is different than the amounts in the Sale Orders for the Whales and differs from the amounts in the Counter Claim. There is no way to know how Wilmington calculated the amount alleged to be due based on what was provided. They have not provided any of their calculations and I cannot determine how the amount was calculated.



21. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 11th, 2015

_____
Hsin Chi Su

UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Hsin Chi Su, §<br>§<br>Plaintiff, §<br>versus §<br>§<br>MEGA INTERNATIONAL §<br>COMMERCIAL BANK CO., §<br>LTD., *et al.* §<br>§<br>Defendants. § | Civil Action H-14-2166 |

### DECLARATION OF KEVIN LIN IN SUPPORT OF HSIN CHI SU'S MEMORANDUM RESPONSE IN OPPOSITION TO WILMINGTON TRUST, NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

I, Kevin Lin, declare pursuant to 28 U.S.C. § 1746:

1. I am over the age of 18 years and am fully competent to make this declaration. I am a Partner at Zhong Yin Law Firm, a law firm organized under the laws of the Republic of China ("ROC"). I received my Bachelor of Law in 2001 from National Taiwan University. I received a Master of Business Administration in 2012 from the University of Cambridge. I was admitted to the practice of law in the ROC in 2004 and have practiced in the ROC since that time, primarily in the areas of finance and law. I have a considerable amount of experience in litigation and non-litigation cases, including syndicated loans, asset securitization, domestic IPO counseling, securities, banking, funds, insurance, mergers and acquisitions. I am a member of the Taiwan Bar. I am familiar with ROC law and make this declaration based on my personal knowledge.

2. I have been asked by counsel for Hsin Chi Su ("Mr. Su") to submit this declaration regarding legal issues related to guarantees Mr. Su executed related to loans for

{851208-00011 BAS 5/8/2015 00963822.DOCX 1}   1


EXHIBIT B

certain vessels identified as Whales. I address the following issues which are followed by my analysis:

    I.    **The maximum liability of the guarantor shall be limited to the level of the principal debt.**

        A. **Legal Authority:**

           1. **Article 741 of the Civil Code:**

In case the liability of the guarantor is heavier than that of the principal debtor, it shall be reduced to the level of the principal debt.

           2. **Taiwan High Court judgment under docket (90) Shang-Zi No. 394:**

The nature of guaranty to the principal debt is dependent and supplementary, which means that the guarantor shall never be responsible for the debt heavier than that of the principal debtor. If any *standard contracts* that break the law and ask the guarantor to be responsible to the debt heavier than the level of the principal debtor, the provisions of such contracts contravene the nature of guaranty and should be held void.

        B. **Analysis and Application:**

In this case, the counterclaim of Wilmington Trust is raised to ask the personal guarantor to be responsible to all debts and other obligations under the loan agreement and guaranty but fails to include any credit or other discount related to the patent rights which were wrongfully seized by selling the ships and allowing credit bids contingent on a sale of the vessels free and clear of Mr. Su's patents. However, according to Article 741 and the **Taiwan High Court judgment under docket (90) Shang-Zi No. 394**, to ask a personal

{851208-00011 BAS 5/8/2015 00963822.DOCX 1}    2

guarantor to be responsible for the obligations of the counterclaim makes his/her liability heavier than that of the principal debtor. In this case, the liability of personal guarantor shall be reduced to the level of the principal debt, which means no more than the principal debt, the interest, the execution fee and some other penalties under the loan agreement and guaranty.

This argument is a defense against the guaranty liability and avoids all possible liability out of that of the principal debtors under the loan agreement. Also, in accordance with **Taiwan High Court judgment under docket (90) Shang-Zi No. 394**, the judge recognized the application of Article 741 (namely the maximum liability of a guarantor shall not be heavier than that of the principal debtor) to standard contracts only. However, the judge didn't limit the application of Article 741 to other guaranty contracts. Article 741 of the Civil Code with respect to the maximum liability of a guarantor should be applicable to all guaranty contracts, and therefore, the provision regarding maximum liability of a guarantor should be applicable in this case.

II. <u>The amount, term and scope of the guaranty liability must be confirmed or at least confirmed thereafter while signing the guaranty contracts. A guaranty that the guarantor agrees to fulfill unlimited obligations shall be deemed as void.</u>

   A. **Legal Authority:**

   1. **Article 72 of the Civil Code:** A juridical act which is against public policy or morals is void.

2. **Article 148 of the Civil Code:** A right cannot be exercised for the main purpose of violating public interests or damaging the others. A right shall be exercised and a duty shall be performed in accordance with the means of good faith.

3. **Article 247-1 of the Civil Code (Standard Contract):** If a contract has been constituted according to the provisions which were prepared by one of the parties for contracts of the same kind, the agreements which include the following agreements and are obviously unfair under that circumstance are void.

   a. To release or to reduce the responsibility of the party who prepared the entries of the contract.

   b. To increase the responsibility of the other party.

   c. To make the other party waive his right or to restrict the exercise of his right.

   d. Other matters gravely disadvantageous to the other party.

4. **Taiwan High Court Kaohsiung Branch judgment under docket (95) Shang-Zi No. 82:** The guarantor agrees to fulfill the principal debtor's all debts, includes Notes, Receipts for a loan, and any other debts no matter it already happened, happens now or will happen in the future. For the debts specified by Notes and Receipts, the guaranty is valid. However, if the guaranty contract contains no provision indicating the specific deadline and the exact amount of debts for which the guarantor is jointly and severally liable, the guaranty provided for the debts that have not been

{851208-00011 BAS 5/8/2015 00963822.DOCX 1}    4

confirmed should be held invalid.

5. **Taiwan Supreme Court under docket (88) Tai-Shang-Zi No. 1084:** If the amount and scope of the guaranty liability confirmed or can be confirmed, and the liability of the guarantor is not heavier than that of the principal debtor, then the guaranty is valid. Guaranty shall be held void if the guarantor agrees to undertake the liabilities arising from unjust enrichment or torts etc. that happened by chance. Under the said circumstances, only guaranty liability that covers debts arising from the principal loan contracts is valid. It means that the court might declare the guaranty that covers occasional obligations that cannot be reasonable expected void.

B. **Analysis and Application:**

In this case, Wilmington Trust counterclaims that the personal guaranty signed by Mr. Su shall cover all obligations incurred during the loan period. The obligations include not only principal debt, interest and penalty arising from contracts, but also occasional obligations that cannot be expected when the guaranty was signed, such as limiting Mr. Su's patent rights against purchase, i.e. the lenders' affiliates and/or, patent infringement damage. According to the *bona fide* principle as defined by Article 72, 148 and 247-1 of the Civil Code and judgments under docket (95) Shang-Zi No. 82 and (88) Tai-Shang-Zi No. 1084 mentioned above, the unpredicted guaranty liability in this part might be considered void. Even if Mr. Su is considered to be a guarantor with

bargaining power, , requiring him to undertake unlimited guaranty liability due to the patent infringement damage caused by lenders' affiliates still contravenes the *bona fide* principle. It means that the court might declare the guaranty that covers patent infringement damage that cannot be reasonably expected void.

III. <u>Change of circumstances doctrine regarding a personal guarantee case.</u>

  A. **Reference articles and Judgments:**

  1. **Article 227-2 of the Civil Code:** If there is change of circumstances which is not predictable then after the constitution of the contract, and if the performance of the original obligation arising therefrom will become obviously unfair, the party may apply to the court for increasing or reducing his payment, or altering the original obligation.

  2. **Taiwan Supreme Court under docket ( 94) Tai-Shang-Zi No. 2367 and Taiwan High Court Taichung Branch under docket (96)Zhong-Shang-Zi No.118** :Both cases emphasize that only objective background circumstances that cannot be expected while signing the contract qualifies as "a change of circumstance".

  B. **Legal Authority:**

  Regarding the exercise of the change of circumstances, Taiwanese court and scholars have recognized several requirements:

  1. There is an objective background circumstance change since the contract has been signed;
  2. The change cannot be expected while contract has been signed;
  3. The change of circumstances is continuing;
  4. The personal guarantor is not imputed to the change of

{851208-00011 BAS 5/8/2015 00963822.DOCX 1}    6

        circumstances.
5. It's unfair to execute the original contract without any adjustment.

In this case, one significant objective background circumstance which changed was that for the first time in the history of the loan, the lenders claimed Mr. Su's personal patents were subject to being limited by a sale of the vessels free and clear of such rights. Prior to early 2014, no lenders ever asserted Mr. Su's patents were collateral, security, pledged or in any way subject to being directly affected by the loans.

IV.    The *bona fide* principle is also a legitimate argument in this case. The only purpose that the creditor exercises his right based on guaranty contract here is to prevent a determination of the Debtors' alleged deficiency which is undetermined at this time.

V.    The determination of the amount owed by the Debtors under the Finance Agreement is governed by English Law and subject to the exclusive jurisdiction of Hong Kong courts. The amount owed under the Finance Agreement needs to be determined prior to proceeding with any attempt to collect on the guaranty against Mr. Su. The guaranty is dependent upon the Finance Agreement for a determination of what is owed.

VI.    Any recognition and enforcement of any judgment must occur in Taiwan under the terms of the guaranty. As such, if the counterclaim is to be decided, it should be transferred to Taiwan. Also, according to Article 402 of the Taiwan Code of Civil Procedure, "*A final and binding judgment rendered by a foreign court shall be recognized, except in case of any of the following circumstances:*

> *1. Where the foreign court lacks jurisdiction pursuant to the R.O.C. laws;*
>
> *2. Where a default judgment is rendered against the losing defendant, except in the case where the notice or summons of the initiation of action had been legally served in a reasonable time in the foreign country or had been served through judicial assistance provided under the R.O.C. laws;*
>
> *3. Where the performance ordered by such judgment or its litigation procedure is contrary to R.O.C. public policy or morals;*
>
> *4. Where there exists no mutual recognition between the foreign country and the R.O.C."*

Therefore, the final and binding judgment regarding the counterclaim can be recognized and enforceable only when it meets R.O.C. public policy or morals.

*VII.* The Guaranty in paragraph (3)(o) states that the JSC, Guarantee and P Note will be "recognized and enforced in the ROC." As such, by the terms of the Guaranty itself, there is a lack of legitimacy for US Courts to exercise jurisdiction on the guaranty matter.

*VIII.* To conclude, Taiwanese courts have recognized that the guarantors shall not be responsible for the debt heavier than that of the principal debtor. In this case, if the counterclaim stands, then the guarantor will be forced to repay much heavier debt than the principal debtor. Taiwanese courts have recognized that the amount, term and range covered by the guaranty liability must be confirmed or at least can be confirmed thereafter while signing the guaranty contracts. The creditor's counterclaim goes against the *bona fide* doctrine. Article 148 of the Civil Code states: "A right cannot be exercised for the main purpose of violating

{851208-00011 BAS 5/8/2015 00963822.DOCX 1}    8

public interests or damaging the others. A right shall be exercised and a duty shall be performed in accordance with the means of good faith." The purpose of the counterclaim is to try to collect against Mr. Su despite the fact that the lenders lacked good faith in the sale of the Whales because they knew of Mr. Su's patent rights and was asserted to further damage Mr. Su despite knowing the equitable claim is unknown and amount of deficiency, if any, has not been determined. Finally, the amount owing under the Finance Agreement would be subject to the exclusive jurisdiction of Hong Kong given the exclusivity provision in the Finance Agreement, then the amount due, if any, on the guarantee will have to be determined in Taiwan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 9th, 2015

/s/ Kevin L.
Kevin Lin